IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT MARTINSBURG

West Virginia Citizens Defense League, Inc.,

       Plaintiff,

             v.

City of Martinsburg, *et al.*, Defendants

_____

Civil Action No.: 3:11-cv-5-JPB

(Bailey, C.J.)

## PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE AND OPPOSITION TO DEFENDANTS' FIRST MOTION TO DISMISS

The Plaintiff, West Virginia Citizens Defense League, Inc. (hereinafter "WVCDL"), by and through its undersigned counsel, respectfully submits the following in response and opposition to Defendants' Pre-Answer Motion to Dismiss filed on March 29, 2011.

## I. INTRODUCTION

On January 24, 2011, WVCDL filed the instant action.  On March 29, 2011, the Defendants filed a pre-answer motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6), alleging lack of standing by WVCDL and failure to state a claim upon which relief may be granted [Doc. 12] and a memorandum of law in support of said motion [Doc. 13].  For the reasons stated herein, WVCDL respectfully requests that this Honorable Court deny Defendants' Pre-Answer Motion to Dismiss or, in the alternative, grant WVCDL leave to file an amended Complaint in light of any deficiencies this Honorable Court may identify.

## II. WVCDL HAS STANDING TO SUE ON BEHALF OF ITS MEMBERS.

Defendants' contention that this Honorable Court is without jurisdiction to hear WVCDL's challenge to Martinsburg City Code § 545.14 because WVCDL has not identified an

1

member who is under an immediate, actual threat of criminal prosecution, is contrary to the prevailing case law, including recent Supreme Court precedent.

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Although there must be some threat of adverse action before an allegedly threatened party may sue,

> where threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced. The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction.

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007). WVCDL brings the instant action on behalf of its members under its "associational standing," under which

> an association has standing to bring suit on behalf of its members when: (1) its members would otherwise have standing to sue as individuals; (2) the interests at stake are germane to the group's purpose; and (3) neither the claim made nor the relief requested requires the participation of individual members in the suit.

*Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002) (citations omitted).

In their pending motion to dismiss, the Defendants seriously contest only whether WVCDL has alleged that its members meet the first element of associational standing—whether "its members would otherwise have standing to sue as individuals," *id.*—and makes further demand for proof of all elements of standing. The Defendants do not attack the truthfulness of the factual statements in WVCDL's Complaint. The Defendants do not dispute that:

> Plaintiff West Virginia Citizens Defense League, Inc. (hereinafter "WVCDL"), is a West Virginia nonprofit corporation.

> WVCDL is a nonpartisan, all-volunteer, grassroots organization of concerned West Virginians who support an individual's right to keep and bear arms for

2

> defense of self, family, home and state, and for lawful hunting and recreational use, as protected by the West Virginia Constitution and the Second Amendment of the United States Constitution.

(Complaint ¶¶ 1-2). Thus, "the interests at stake are germane to [WVCDL's] purpose[.]" *Ferrell Parkway*, 282 F.3d at 320. Defendants do not advance any argument that "the claim made []or the relief requested requires the participation of individual members in the suit." *Id.*

In this case, Defendants are mounting only a "facial attack"—as opposed to a "factual attack"—on the Complaint's allegations regarding whether any individual WVCDL member would otherwise have standing to sue as individuals under *Thigpen v. United States*, 800 F.2d 393 (4th Cir. 1986). *See also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

> Generally, challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: "facial attacks" and "factual attacks." *Thigpen*[], 800 F.2d [at] 401 n. 15[], *rejected on other grounds, Sheridan v. United States*, 487 U.S. 392 (1988). A "facial attack" questions whether the allegations in the complaint are sufficient to sustain the court's jurisdiction. *Id.* If a "facial attack" is made, the court must accept the allegations in the complaint as true and decide if the complaint is sufficient to confer subject matter jurisdiction. *Id.*

> On the other hand, a "factual attack" challenges the truthfulness of the factual allegations in the complaint upon which subject matter jurisdiction is based. In this situation, a "district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."

*Ohio Valley Environmental Coalition, Inc. v. Apogee Coal Co., LLC*, 531 F.Supp.2d 747, 764 (S.D. W.Va. 2008) (internal citations and footnote omitted).

> At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (*quoting Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)) (quotation marks and alteration in original).

It is well-settled that an individual has standing to sue if (1) the person has suffered an actual or threatened injury that is not conjectural or hypothetical, (2) the injury is fairly traceable to the challenged conduct; and (3) a favorable decision is likely to redress the injury. *Id.*, at 560-61; *Allen v. Wright*, 468 U.S. 737, 751 (1984).

Arthur Thomm, II, is a resident of Berkeley County, West Virginia, and is a member of WVCDL.   Declaration of Arthur Thomm, II ¶¶ 2-3. Mr. Thomm is has a West Virginia concealed handgun license and usually carries a handgun on his person except when and where prohibited by law. *Id.* at ¶¶ 7, 9. As a frequent visitor to various city-owned buildings covered by Martinsburg City Code § 545.14, Mr. Thomm is subjected to a deprivation of his right to keep and bear arms every time he enters a Martinsburg city-owned building. *Id.* at ¶¶ 11-15. The city-owned buildings Mr. Thomm regularly visits have signs posted at their entrances clearly stating:

> No Firearms allowed per Martinsburg City Code 545.14 Any person carrying or possessing a firearm or other deadly weapon on any public property or in any building owned, leased or under the care, custody and control of the City of Martinsburg or any political subdivision of the City of Martinsburg who refuses to temporarily relinquish possession of such firearm or other deadly weapon, upon being requested to do so, or to leave such premises, while in possession of such firearm or other deadly weapon, shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00) for each offense and, in the discretion of the Police Court Judge, may be placed in jail for a term not to exceed thirty (30) days, or both.

*Id.* at ¶ 12. The loss of Second Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. *Cf. Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.") (citation and footnote omitted).

> Given *Heller's* focus on "core" Second Amendment conduct and the Court's frequent references to First Amendment doctrine, we agree with those who advocate looking to the First Amendment as a guide in developing a standard of review for the Second Amendment.

*U.S. v. Chester*, 628 F.3d 673, 682 (4th Cir. 2010).

In *Mobil Oil Corp. v. Attorney General of Virginia*, 940 F.2d 73, 76 (4th Cir. 1991), the 4th Circuit clearly rejected the extreme interpretation of its earlier decision in *Doe v. Duling*, 782 F.2d 1202 (4th Cir. 1986), now asserted by Defendants.  *Duling* involved a "challenge[] on privacy grounds [to] a nineteenth century fornication statute which had not been enforced in private homes for years, if not decades." *Mobil Oil*, 940 F.2d at 76 (*quoting American Booksellers Ass'n, Inc. v. Virginia*, 802 F.2d 691, 694 n. 4 (4th Cir. 1986)).  Here, as in *American Booksellers* and *Mobil Oil*, we are dealing with a recently-enacted law, not some anachronistic throwback to a prior century that was being openly violated en masse without any enforcement action of any kind.  The ordinance at issue in this case was initially enacted in 2005 and amended in 2008 to reduce its scope of applicability from all city property—including open lands—to only city buildings.  Like Mobil Oil, WVCDL's members have "alleged 'an actual and well-founded fear' that the law will be enforced, and ha[ve] in fact 'self-censored' [themselves] by complying with the statute, incurring harm all the while." *Mobil Oil*, 940 F.2d at 76.

While, to WVCDL's knowledge, none of its members have violated Martinsburg City Code 545.14—and thus no WVCDL member has been arrested, prosecuted, convicted, fined or imprisoned for violating it—whether or not such direct enforcement actions have been taken is absolutely irrelevant to the challenging party's standing to sue.  WVCDL's members simply are not "required to await and undergo a criminal prosecution as the sole means of seeking relief." *Doe v. Bolton*, 410 U.S. 179, 188 (1973). As the Supreme Court more recently and clearly explained:

> where threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced. The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction.

*MedImmune*, 549 U.S. at 128-29.

Per the advice of the 4th Circuit in *Mobil Oil* and the Supreme Court in *MedImmune*, Mr. WVCDL's members "prefer 'official adjudication to public disobedience.'" *National Rifle Ass'n v. Magaw*, 132 F.3d 272, 287 (6th Cir. 1997)  (*quoting* 13A, Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, § 3532.5, at 183-84 (2d ed. 1984)).[1]

> Public policy should encourage a person aggrieved by laws he considers unconstitutional to seek a declaratory judgment against the arm of the state entrusted with the state's enforcement power, all the while complying with the challenged law, rather than to deliberately break the law and take his chances in the ensuing suit or prosecution.

*Mobil Oil*, 940 F.2d at 75. This concern is particularly acute in light of the ordinance's vagueness. *See* Part III.A. *infra*. A challenge to a firearms prohibition is justiciable where "the plaintiffs wish to engage in conduct plainly prohibited on the face of the allegedly unconstitutional statute." *Coalition of New Jersey Sportsmen, Inc. v. Whitman*, 44 F. Supp. 2d 666, 673 n.10 (D. N.J. 1999), *aff'd*, 263 F.3d 157 (3d Cir.) (mem.), *cert. denied*, 534 U.S. 1039 (2001).  Unlike *Coalition of New Jersey Sportsmen*, the claims of WVCDL's members are more palpable, as the scope of prohibited conduct is so unclear as to be void for vagueness. *See* Part III.A. *infra*.

Although it could be argued that WVCDL's members not suffer a legally-cognizable injury once the person leaves a city-owned building and is no longer subject to the challenged

---

[1]  The 4th Circuit has not adopted the more restrictive standards for standing prevailing in the 6th Circuit and D.C. Circuit to which Defendants cite.  The standard for standing to seek a declaratory judgment stated by the Supreme Court in *MedImmune*, 549 U.S. at 128-29, is controlling.

6

ordinance, repetitive injuries do not evade judicial review. *See, e.g., Roe v. Wade*, 410 U.S. 113, 125 (1973); *Bolton*, 410 U.S. at 187-88.

There is no reason to dispute that WVCDL's members' injuries in this action are fairly traceable to the challenged conduct, as Defendants' threatened enforcement of Martinsburg City Code § 545.14 is the entire basis of this action.  Nothing in this action is based upon "the independent action of some third party not before the court." *Defenders of Wildlife*, 504 U.S. at 560-61 (*quoting Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976)).

It is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision[,]" *id.* (*quoting Simon*, 426 U.S. at 38, 43) (internal citation and quotation marks omitted), because an injunction against the challenged ordinance will relieve all WVCDL members from the burdens of the ordinance. Conversely, if this Honorable Court sees fit to deny injunctive relief but instead grants a declaratory judgment declaring the challenged ordinance unconstitutional or a violation of state law, such relief would also redress WVCDL members' injury because such a judgment would clearly signal to the Defendants and the local courts that the ordinance is unenforceable.

### III. WVCDL HAS STATED CLAIMS UPON WHICH RELIEF CAN BE GRANTED.

Defendants make no argument regarding the merits of their assertion that WVCDL has failed to allege claims upon which relief can be granted other than to rehash their standing arguments refuted in Part II above.  Nevertheless, WVCDL contends that each Count of its Complaint has alleged a claim upon which relief can be granted by this Honorable Court, as its claims are based upon nonconclusory factual allegations that are plausible on their face under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937 (2009).

### A. Martinsburg City Code § 545.14 is void for vagueness.

In a creative attempt to do an end run around West Virginia's municipal gun control preemption law, *see* Part III.B., *infra*, Defendants have drawn themselves into a corner filled with legal quicksand by enacting and enforcing an ordinance that is unconstitutionally vague. At issue is subsection (c) of the ordinance, which provides:

> Any person carrying or possessing a firearm or other deadly weapon in any building owned, leased or under the care, custody and control of the City of Martinsburg or any political subdivision of the City of Martinsburg who refuses to temporarily relinquish possession of such firearm or other deadly weapon, upon being requested to do so, or to leave such premises, while in possession of such firearm or other deadly weapon, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00) for each offense and, in the discretion of the Police Court Judge, may be placed in jail for a term not to exceed thirty (30) days, or both.

Martinsburg City Code § 545.14(c). This subsection prescribes a criminal penalty for possessing or carrying a firearm in a Martinsburg city building.  However, this penalty is only applicable if the person in possession of a firearm "refuses to temporarily relinquish possession of such firearm or other deadly weapon, upon being requested to do so, or to leave such premises, while in possession of such firearm or other deadly weapon[.]"

> It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut(s) upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of (those) freedoms." Uncertain meanings inevitably lead citizens to "'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked."

*Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972) (footnotes omitted).  Martinsburg City Code § 545.14 meets none of these basic due process protections.

The West Virginia Supreme Court of Appeals follows similar standards for determining whether a law is void for vagueness under the Due Process Clause of W.Va. Const. Art. III, § 10.

> A criminal statute must be set out with sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is prohibited by statute and to provide adequate standards for adjudication.

> Statutes involving a criminal penalty, which govern potential First Amendment freedoms or other similarly sensitive constitutional rights, are tested for certainty and definiteness by interpreting their meaning from the face of the statute.

Syllabus Points 1-2, *State v. Flinn*, 158 W.Va. 111, 208 S.E.2d 538 (1974).

For the foregoing reasons, WVCDL respectfully submits that it has stated in Counts 1 and 2 of its Complaint claims upon which relief can be granted.

### B. Martinsburg City Code § 545.14 is preempted and void as a matter of state law.

Martinsburg City Code § 545.14, which was first enacted in 2005 and amended into its current form in 2008, is clearly void as a matter of state law because it is preempted by statute.

> The provisions of section five of this article notwithstanding, neither a municipality nor the governing body of any municipality may limit the right of any person to purchase, possess, transfer, own, carry, transport, sell or store any revolver, pistol, rifle or shotgun or any ammunition or ammunition components to be used therewith nor to so regulate the keeping of gunpowder so as to directly or indirectly prohibit the ownership of the ammunition. Nothing herein shall in any way impair the authority of any municipality, or the governing body thereof, to enact any ordinance or resolution respecting the power to arrest, convict and punish any individual under the provisions of subdivision (16), section five of this article or from enforcing any such ordinance or resolution: *Provided*, That any municipal ordinance in place as of the effective date of this section shall be excepted from the provisions of this section: *Provided, however*, That no provision in this section may be construed to limit the authority of a municipality to restrict the commercial use of real estate in designated areas through planning or zoning ordinances.

W.Va. Code § 8-12-5a (1999).[2]

"When a provision of a municipal ordinance is inconsistent or in conflict with a statute enacted by the Legislature the statute prevails and the municipal ordinance is of no force and effect." Syllabus Point 1, *Vector Co. v. Board of Zoning Appeals of City of Martinsburg*, 155 W.Va. 362, 184 S.E.2d 301 (1971). "If *any* reasonable doubt exists as to whether a municipal corporation has a power, the power *must* be denied." Syllabus Point 2, in part, *State ex rel. City of Charleston v. Hutchinson*, 154 W.Va. 585, 176 S.E.2d 691 (1970) (emphasis added).

Based upon Defendants' failure to defend the ordinance on the merits in their opening brief, [Doc. 13], WVCDL has been forced to speculate about the legal basis under which Defendants can conceivably defend the validity of the challenged ordinance under state law. Based upon the text of the ordinance, the most probable explanation is that Defendants must believe they are authorized to enact and enforce the ordinance under W.Va. Code § 61-7-14 (1989), even though that section of the Code predates the preemption law by a decade and was superseded by the preemption law.

> Notwithstanding the provisions of this article, any owner, lessee or other person charged with the care, custody and control of real property may prohibit the carrying openly or concealing of any firearm or deadly weapon on property under his or her domain: *Provided*, That for purposes of this section "person" means an individual or any entity which may acquire title to real property.
>
> Any person carrying or possessing a firearm or other deadly weapon on the property of another who refuses to temporarily relinquish possession of such firearm or other deadly weapon, upon being requested to do so, or to leave such premises, while in possession of such firearm or other deadly weapon, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not more than one thousand dollars or confined in the county jail not more than six months, or both: *Provided*, That the provisions of this section shall not apply to those

---

[2]  The reference to "the effective date of this section" in the first proviso of W.Va. Code § 8-12-5a was enacted as part of the most recent amendments to that section, which were enacted by the West Virginia Legislature as part of 1999 W.Va. Acts Ch. 290, which took effect on June 1, 1999, and thus "the effective date of this section" should be read as "June 1, 1999."

persons set forth in subsections (3) through (6), section six of this [article] while such persons are acting in an official capacity . . . .

W.Va. Code § 61-7-14 (1989).

The West Virginia Supreme Court of Appeals has long recognized that municipalities derive their power from the Legislature and are subject to its strict control of their actions.

> Municipalities are but political subdivisions of the state, created by the Legislature for purposes of governmental convenience, deriving not only some, but all, of their powers from the Legislature. They are mere creatures of the Legislature, exercising certain delegated governmental functions which the Legislature may revoke at will. In fact, public policy forbids the irrevocable dedication of governmental powers. The power to create implies the power to destroy.

*Booten v. Pinson*, 77 W.Va. 412, 421, 89 S.E. 985, 989 (1915). In other words,

> [m]unicipalities are creatures of the State who draw their powers from the law which creates them; therefore, if a [municipal ordinance] conflicts with either our Constitution or our general laws, the [ordinance], being the inferior law, must fail.

*Marra v. Zink*, 163 W.Va. 400, 404, 256 S.E.2d 581, 584 (1979) (*citing Vector Co. v. Board of Zoning Appeals of City of Martinsburg, supra*). "A municipal corporation possesses no inherent police power. It has only such regulatory authority as has been expressly or impliedly delegated to it by the Legislature." Syllabus Point 1, *State ex rel. Kelley v. City of Grafton*, 87 W.Va. 191, 104 S.E. 487 (1920).

> A municipal corporation is a creature of the State, and can only perform such functions of government as may have been conferred by the Constitution, or delegated to it by the law-making authority of the State. It has no inherent powers, and only such implied powers as are necessary to carry into effect those expressly granted.

Syllabus Point 1, *Brackman's Inc., v. City of Huntington*, 126 W.Va. 21, 27 S.E.2d 71 (1943).

The West Virginia Supreme Court of Appeals has long construed municipal powers with the most exacting scrutiny under which it maintains a strong presumption against the recognition

11

of any power claimed by a municipality, which the municipality bears a heavy burden to overcome.

> Municipalities have no inherent power with regard to the exercise of the functions of their government. Such power depends **solely** upon grants of power by Acts of the Legislature, and the Legislature may at any time modify, change or withdraw any power so granted by general law in conformance with the provisions of the Constitution, Article VI, Section 39(a).

Syllabus Point 2, *State ex rel. Alexander v. County Court of Kanawha County*, 147 W.Va. 693, 130 S.E.2d 200 (1963) (emphasis added).

> A municipal corporation has only the powers granted to it by the legislature, and any such power it possesses must be expressly granted or necessarily or fairly implied or essential and indispensable. If **any** reasonable doubt exists as to whether a municipal corporation has a power, the power **must** be denied.

Syllabus Point 2, *State ex rel. City of Charleston v. Hutchinson, supra* (emphasis added).

When the Legislature enacted the preemption statute, it made no exception for regulating firearms in municipal buildings. The only exceptions it created were a grandfather clause for existing ordinances and an exception for planning or zoning ordinances. W.Va. Code § 8-12-5a.

*See also,* Phil Kabler, *Pro-gun bill likely to win*, Charleston Gazette, Jan. 19, 1999, at A1.

> In the interpretation of a statute, the legislative intention is the controlling factor; and the intention of the legislature is ascertained from the provisions of the statute by the application of sound and well established canons of construction.

Syllabus Point 2, *Meadows v. Wal-Mart Stores, Inc.*, 207 W.Va. 203, 530 S.E.2d 676 (1999).

"The primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature." Syllabus Point 8, *Vest v. Cobb*, 138 W.Va. 660, 76 S.E.2d 885 (1953); *see also,* Syllabus Point 1, *Smith v. State Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975) ("The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."). "Interpreting a statute presents a purely legal question subject to our *de novo* review on which neither party bears the burden of proof." Syllabus Point 1, *West*

*Virginia Human Rights Commission v. Garretson*, 196 W.Va. 118, 468 S.E.2d 733 (1996). The Legislature recognized the threat of 55 counties and 232 municipalities creating a patchwork quilt of local gun laws that would have entangled gun owners in an unworkable web of literally hundreds of different regulatory regimes throughout the state. In 1999, the Legislature revoked all authority local governments had or may have had to enact firearm restrictions.

The application of the preemption statute against Martinsburg's ordinance is supported by the history of the preemption statute and municipal actions predating the preemption statute. The cities of Charleston, South Charleston, and Dunbar have ordinances grandfathered under the preemption statute prohibiting the possession of firearms and other weapons on city-owned property.[3] The City of Charleston also has numerous ordinances grandfathered under the preemption law regulating the sale of handguns.[4] The Legislature was aware of these ordinances at the time it enacted the preemption statute and passed the preemption statute specifically to forbid the expansion of these types of ordinances to other municipalities. "When viewing legislative actions, the substance of the act complained of, instead of its simple form, directs the ensuing analysis." *Napier v. Napier*, 211 W.Va. 208, 212, 564 S.E.2d 418, 422 (2002). The substance of the act complained of when the Legislature enacted the preemption statute was the threat of the proliferation of local ordinances throughout the state restricting firearms where the restricted actions were otherwise lawful under federal and state law. In light of the Charleston, South Charleston, and Dunbar ordinances, the Legislature chose to preempt all future municipal ordinances with no exception for the exclusion of firearms from municipal buildings or other municipal public property.

---

[3] WVCDL and several of its individual members are challenging these ordinances on other grounds independent of the preemption law. *See generally, West Virginia Citizens Defense League, et al., v. City of Charleston, et al.*, Civil Action No. 2:11-cv-48 (S.D. W.Va. filed Jan. 24, 2011).

[4] *Id.*

With respect to restricting firearms from city property or city-owned or operated buildings, Martinsburg may assert that it has the power to enact and enforce the ordinance by virtue of its powers as a property owner.  The preemption statute begins, "[t]he provisions of section five of this article [§8-12-5] notwithstanding[.]" This language overrides certain legal authorities provided by W.Va. Code § 8-12-5. Martinsburg may contend the preemption statute does not supersede the provisions of W.Va. Code § 61-7-14 or any other provision of the West Virginia Code outside § 8-12-5. "It has been a traditional rule of statutory construction that the Legislature is presumed to intend that every word used in a statute has a specific purpose and meaning." *State ex rel. Johnson v. Robinson*, 162 W.Va. 579, 582, 251 S.E.2d 505, 508 (1979). "In the interpretation of statutory provisions the familiar maxim *expressio unius est exclusio alterius*, the express mention of one thing implies the exclusion of another, applies." Syllabus Point 3, *Manchin v. Dunfee*, 174 W.Va. 532, 327 S.E.2d 710 (1984).

> A general statute, which does not use express terms or employ words which manifest a plain intention so to do, will not repeal a former statute dealing with a particular subject, and the two statutes will operate together unless the conflict between them is so real and irreconcilable as to indicate a clear legislative purpose to repeal the former statute.

Syllabus Point 6, *Harbert v. Harrison County Court*, 129 W.Va. 54, 39 S.E.2d 177 (1946). Although "[a]s a general rule of statutory construction, if several statutory provisions cannot be harmonized, controlling effect must be given to the last enactment of the Legislature[,]" Syllabus Point 2, *State ex rel. Department of Health and Human Resources v. West Virginia Public Employees Retirement System*, 183 W.Va. 39, 393 S.E.2d 677 (1990), "[t]he Legislature, when it enacts legislation, is presumed to know of its prior enactments[,]" Syllabus Point 12, *Vest v. Cobb, supra*, and "[t]he repeal of a statute by implication is not favored, and where two statutes are in apparent conflict, the Court must, if reasonably possible, construe such statutes so as to give effect to each." Syllabus Point 4, *State ex rel. Graney v. Sims*, 144 W.Va. 72, 105 S.E.2d

886 (1958).  Therefore, under such an analysis, a court should not read the preemption statute as overriding the ordinance because Martinsburg purports to derive its legal authority from W.Va. Code § 61-7-14 (1989).

Defendants would be incorrect in this analysis because the statutory construction cases on which such an argument rests do not involve limitations on municipal authority.  The Supreme Court of Appeals has been emphatic in its strict construction of municipal powers. West Virginia municipalities attempting to assert any power have a heavy burden. "If *any* reasonable doubt exists as to whether a municipal corporation has a power, the power *must* be denied." Syllabus Point 2, in part, *State ex rel. City of Charleston v. Hutchinson, supra* (emphasis added).

The rights of a property owner pursuant to W.Va. Code § 61-7-14 (1989) are predicated upon the ownership of property. Martinsburg may also submit that it derives its basic power to acquire, hold, and possess real property from W.Va. Code § 8-12-1(4) and, therefore, it is outside the scope of the preemption statute. However, the plain language of W.Va. Code § 8-12-1(4) clearly states that the authority it provides any municipality is subordinate to any other restrictions provided in the Municipal Code of West Virginia.

> ***Except as otherwise provided in this chapter***, every municipality shall have plenary power and authority:
>
> \*   \*   \*
>
> (4) To take, purchase, hold and lease as lessee (on an annual fiscal year basis where tax revenues are to be used to make the rental payments required under any such lease, with or without an option to renew such lease each year for another such period), for any municipal purpose, real or personal property within or without the corporate limits of the municipality . . . , ***subject, however, to any limitations or qualifications set forth in this chapter eight***[.]

W.Va. Code § 8-12-1 (emphasis added).  By its own terms, W.Va. Code § 8-12-1 provides not one, but two separate subordination clauses that leave no doubt that it is to be the lowest man on the totem pole when analyzing a municipal authority question under West Virginia law.

In addition to the powers and authority granted by: (i) The constitution of this state; (ii) other provisions of this chapter; (iii) other general law; and (iv) any charter, and to the extent not inconsistent or in conflict with any of the foregoing except special legislative charters, every municipality and the governing body thereof shall have plenary power and authority therein by ordinance or resolution, as the case may require, and by appropriate action based thereon:

\*   \*   \*

(36) To establish, construct, acquire, maintain and operate public buildings, municipal buildings or city halls, auditoriums, arenas, jails, juvenile detention centers or homes, motor vehicle parking lots or any other public works;

(37) To establish, construct, acquire, provide, equip, maintain and operate recreational parks, playgrounds and other recreational facilities for public use and in this connection also to proceed in accordance with the provisions of article two, chapter ten of this code;

(38) To establish, construct, acquire, maintain and operate a public library or museum or both for public use;

(39) To provide for the appointment and financial support of a library board in accordance with the provisions of article one, chapter ten of this code;

\*   \*   \*

(41) To establish, construct, acquire, maintain and operate hospitals, sanitaria and dispensaries;

\*   \*   \*

(43) To exercise general police jurisdiction over any territory without the corporate limits owned by the municipality or over which it has a right-of-way;

(44) To protect and promote the public morals, safety, health, welfare and good order;

\*   \*   \*

(49) To establish, construct, require, maintain and operate such instrumentalities, other than free public schools, for the instruction, enlightenment, improvement, entertainment, recreation and welfare of the municipality's inhabitants as the governing body may consider necessary or appropriate for the public interest;

W.Va. Code § 8-12-5.   W.Va. Code § 8-12-5a specifically provides that it overrides and

supersedes W.Va. Code § 8-12-5 ("[t]he provisions of section five of this article

16

notwithstanding").  W.Va. Code § 8-12-5, by its own terms, is *the* statutory authority for the construction, maintenance, and operation of the types of municipal buildings to which Martinsburg's ordinance applies.

To the extent statutes providing general powers for municipalities provide a general authority for firearm restrictions, the preemption statute must control because "[t]he general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled." Syllabus Point 1, *UMWA by Trumka v. Kingdon*, 174 W.Va. 330, 325 S.E.2d 120 (1984).  Neither the Municipal Code of West Virginia, nor any other provision of the West Virginia Code, whether enacted before or after 1999, provides a more specific measure that can be construed to limit the preemption statute under *Trumka*.

Any attempt to interpret the preemption statute to permit the ordinance to stand would constitute an impermissible judicial revision of a statute enacted by the Legislature. "A statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten." Syllabus Point 1, *Consumer Advocate Division v. Public Service Commission*, 182 W.Va. 152, 386 S.E.2d 650 (1989). It is not the province of courts to make or supervise legislation, and a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled, or rewritten, or given a construction of which its words are not susceptible, or which is repugnant to its terms which may not be disregarded. *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W.Va. 137, 144-45, 107 S.E.2d 353, 358 (1959).  The Legislature decided in 1999 to completely revoke the authority of municipalities to enact any ordinance limiting the right of a person to purchase, possess, transfer, own, carry, transport, sell or store any firearm.  Martinsburg's ordinance is a "direct, explicit

attempt by the city to regulate an area that the State has preempted." *Longwell v. Hodge*, 171 W.Va. 45, 50, 297 S.E.2d 820, 825 (1982) (citation omitted).

The combination of the preemption statute and the strong presumption against the recognition of assertions of municipal authority provide a clear, unambiguous state policy against the enactment of any form of municipal ordinance restricting where, when, how, or by whom firearms may be purchased, possessed, transferred, owned, carried, transported, sold or stored. "Where the words of a statute are plain, free of ambiguity, conveying a plain intent, there is no room for construction by a court, but only for obedience to the legislative will." Syllabus Point 1, *Kelley & Moyers v. Bowman*, 68 W.Va. 49, 69 S.E. 456 (1910).

> When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute.

Syllabus Point 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars, supra.*

> When a statute is clear and unambiguous and the legislative intent is plain the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute.

Syllabus Point 1, *State ex rel. Fox v. Board of Trustees of the Policemen's Pension or Relief Fund of the City of Bluefield, et al.*, 148 W.Va. 369, 135 S.E.2d 262 (1964). "Judicial interpretation of a statute is warranted only if the statute is ambiguous and the initial step in such interpretative inquiry is to ascertain the legislative intent." Syllabus Point 1, *Ohio County Commission v. Manchin*, 171 W.Va. 552, 301 S.E.2d 183 (1983).

For the foregoing reasons, WVCDL respectfully submits that it has stated in Counts 5 and 6 of its Complaint claims upon which relief can be granted.

### *C. Martinsburg City Code § 545.14 is unconstitutional under the*

### *West Virginia Right to Keep and Bear Arms Amendment.*

To the extent it operates as a complete prohibition on bearing arms in city buildings, Martinsburg City Code § 545.14 is an overly broad ordinance that violates the right of WVCDL's members to keep and bear arms under W.Va. Const. Art. III, § 22.

> Article III, section 22 of the West Virginia Constitution was approved by the voters of this State on November 4, 1986, and succinctly states: "A person has the right to keep and bear arms for the defense of self, family, home and state, and for lawful hunting and recreational use."

*State ex rel. City of Princeton v. Buckner*, 180 W.Va. 457, 459, 377 S.E.2d 139, 141 (1988).

In its analysis of facial challenges to laws implicating an individual's right to keep and bear arms under W.Va. Const. Art. III, § 22, the West Virginia Supreme Court of Appeals, at a time when the Second Amendment to the United States Constitution was neither regarded as an individual right nor applicable to the states, *id.* at 460 n. 6, 377 S.E.2d at 142 n. 6, held that the First Amendment overbreadth doctrine is applicable to laws implicating the right to keep and bear arms and that the court would not attempt to judicially reform or salvage an overbroad law.

> An "overbroad" law, as that term has been developed by the United States Supreme Court, is not vague, or need not be. Its vice is not failure to communicate. Its vice may be clarity. For a law is overbroad to the extent that it announces a prohibition that reaches conduct which may not be prohibited. A legislature can make a law as "broad" and inclusive as it chooses unless it reaches into constitutionally protected ground. The clearer an "overbroad" statute is, the harder it is to confine it by interpretation within its constitutionally permissible reach.

*Id.* at 462, 377 S.E.2d at 144 (citation omitted).

> The facts in this case are uncontroverted. On March 10, 1987, a municipal police officer in the City of Princeton, in Mercer County, stopped a vehicle and arrested the driver for driving under the influence of alcohol. After searching the driver, the policeman discovered a .22 caliber automatic pistol inside the driver's jacket pocket. The driver was then asked to produce a license allowing him to carry such a weapon, and he subsequently advised the police officer that he did not have such a license.

*Id.* at 458-59, 377 S.E.2d at 140-41.  Less than two years later, after the Legislature reformed West Virginia's gun laws in light of *Buckner*, the court affirmed the constitutionality of W.Va. Code § 61-7-3 (1989) (requiring license to carry a *concealed* weapon), holding that

> Article III, Section 22 of the West Virginia Constitution gives a citizen the constitutional right to keep and bear arms; however, there is no corresponding constitutional right to keep and bear ***concealed*** deadly weapons.

Syllabus Point 1, *Application of Metheny*, 182 W.Va. 722, 391 S.E.2d 635 (1990) (emphasis added).  Had the court chosen to apply the general rule of facial challenges articulated in *Lewis v. Canaan Valley Resorts, Inc.*, 185 W.Va. 684, 691, 408 S.E.2d 634, 641 (1991) ("The challenger must establish that no set of circumstances exists under which the legislation would be valid; the fact that the legislation might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid."), and its federal counterpart, *U.S. v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."), it clearly would have decided *Buckner* differently, as the unnamed drunk driver was carrying his pistol inside his coat pocket, which was obviously concealed and thus outside the specific protections of W.Va. Const. Art. III, § 22 under *Metheny*.  Likewise, the court could also have held that W.Va. Const. Art. III, § 22 does not protect the right of a person to carry a loaded pistol while under the influence of alcohol, as the legislative analysis and advertising materials promoting the Right to Keep and Bear Arms Amendment stated that the Amendment did not protect "carrying arms while intoxicated[.]" McNeely, 89 W.Va. L. Rev. at 1149, 1180-81.[5]

---

[5] Although W.Va. Code § 20-2-57b prohibits hunting while under the influence without regard to type of hunting equipment used, no West Virginia state law currently restricts or prohibits the possession or carrying of firearms or other weapons on the basis of intoxication.  Thus, West Virginia's courts have not been required to address this issue.

W.Va. Const. Art. III, § 22, at its core, protects "the decent people of this state from being disarmed." James W. McNeely, *The Right of Who to Bear What, When, and Where—West Virginia Firearms Law v. The Right-to-Bear-Arms Amendment*, 89 W.Va. L. Rev. 1125, 1143, 1178 (1987) (article cited with approval extensively in *Buckner*). It "guarantee[s] that a person may exercise the choice to have arms to lawfully and effectively resist violent criminal aggression against self, family, or home." *Id.* at 1178. This guarantee is not confined to the home or other narrowly-defined, purely private areas. *See State ex rel. City of Princeton v. Buckner, supra.*

Martinsburg City Code § 545.14 has practical application only against law-abiding adults who are otherwise in full compliance with federal and state gun laws. A violation of Martinsburg City Code § 545.14 is punishable, at most, by a $1,000 fine and up to 30 days in jail. This penalty is no deterrent to a criminal. W.Va. Code § 61-7-3 prohibits carrying a concealed weapon without a license. Possession of a firearm by a prohibited possessor such as a convicted felon, drug addict, illegal alien, involuntarily committed person, person adjudicated as a mental defective, person subject to certain domestic violence protective orders, or person who has been convicted of certain domestic violence-related offenses, regardless of whether the firearm is carried openly or concealed, is generally prohibited by both State and Federal law. 18 U.S.C. §§ 922(g) and 924(a)(2); W.Va. Code § 61-7-7. Federal and State laws also prohibit minors from carrying a handgun, either openly or concealed, in most public places. 18 U.S.C. §§ 922(x) and 924(a)(6); W.Va. Code § 61-7-8. W.Va. Code § 61-7-11 prohibits a person from "carry[ing], brandish[ing] or us[ing any deadly] weapon in a way or manner to cause, or threaten, a breach of the peace." W.Va. Code § 61-7-12 prohibits any person from "wantonly perform[ing] any act with a firearm which creates a substantial risk of death or serious bodily injury to another[.]" In

every case, any violation of any of these laws is punishable far more severely than a violation of

Martinsburg City Code § 545.14.  As most WVCDL members whose interests are stake in this

action, including Mr. Thomm, have concealed handgun licenses, it must be noted that

> [legislative] auditors and [West Virginia State Police Deputy Superintendent
> Steve] Tucker said they were unaware of an instance when an officer was
> confronted by someone licensed to carry a concealed weapon. "Anecdotally,
> concealed weapon permit holders are law-abiding citizens that we generally don't
> have as defendants in criminal cases," Tucker said.

Lawrence Messina, *Troopers Say Manpower Lacking*, Charleston Gazette, Nov. 19, 2008, at A1.

For these reasons, Martinsburg City Code § 545.14 is a direct attack on the core right of the

decent people of this state to be armed.

As a law implicating a fundamental individual right—the absolute core of an individual's

fundamental right to keep and bear arms for purposes of self-defense under W.Va. Const. Art.

III, § 22—Martinsburg City Code § 545.14 is subject to strict scrutiny under the West Virginia

Constitution. "If the challenged [law] affects the exercise of a fundamental right . . . , the law

will not be sustained unless the [government] can prove that the classification is necessary to the

accomplishment of a compelling state interest." *Appalachian Power Co. v. State Tax Dep't*, 195

W.Va. 573, 594, 466 S.E.2d 424, 445 (1995) (citations omitted); *see also Board of Educ. of

County of Kanawha v. West Virginia Bd. of Educ.*, 219 W.Va. 801, 807, 639 S.E.2d 893, 899

(2006) ("the strict scrutiny test is required when the law or governmental action at issue

impinges upon a fundamental right").  "[I]t is clear that . . . the right to keep and bear arms [is]

among those fundamental rights necessary to our system of ordered liberty[,]" *McDonald v. City

of Chicago, Ill.*, 561 U.S. ___, ___, 130 S.Ct. 3020, 3042 (2010), and "this right is deeply rooted

in this Nation's history and tradition." *Id.* at ___, 130 S.Ct. at 3036 (internal quotation marks and

citation omitted).

The offensiveness of Martinsburg City Code § 545.14 is further highlighted by the fact that, if upheld, it will deprive the decent, law-abiding people of this state, including WVCDL's members, of any means of self-defense if confronted by a criminal in a city-owned building.

> Based upon information available to me, the defendants do not maintain any laws, customs, practices, or policies providing for the security of any city-owned buildings . . . under which individuals who enter buildings where Martinsburg City Code § 545.14 prohibits carrying deadly weapons are required to submit to security screenings and adequate security measures are maintained to detect and interdict the unlawful conveyance of deadly weapons into those premises. Consequently, the laws, customs, practices, and policies of the Defendants challenged in this action provide no actual protection of any individuals present in city-owned buildings to which Martinsburg City Code § 545.14 is applicable, as there are no adequate security measures in place to reliably detect and apprehend individuals violating the ordinance.

> The Defendants have no affirmative legal duty to guarantee the personal safety of individuals in buildings where Martinsburg City Code § 545.14 prohibits carrying weapons, nor would any of them be subject to any liability for any personal injuries or death suffered by any individual who is the victim of a crime in any building where Martinsburg City Code § 545.14 prohibits carrying weapons and was unable to defend him- or herself because he or she was disarmed in compliance with the ordinance.

Thomm Dec. ¶¶ 16, 18.  Defendants further deprive WVCDL's members of the means of self-defense beyond the walls of the directly affected buildings:

> Based upon information available to me, the Defendants maintain laws, customs, practices, and policies that do not provide any means for individuals to temporarily check and store weapons in a secure storage facility prior to entering any buildings where Martinsburg City Code § 545.14 prohibits carrying weapons.

Thomm Dec. ¶¶ 17.

Contrary to alarmist assertions that Defendants might try to offer, WVCDL does not take the absolutist position that W.Va. Const. Art. III, § 22 requires the government to allow the bearing of arms by literally anyone, anywhere, any time.

> The West Virginia legislature may, through the valid exercise of its police power, reasonably regulate the right of a person to keep and bear arms in order to promote the health, safety and welfare of all citizens of this State, provided that the restrictions or regulations imposed do not frustrate the constitutional freedoms

guaranteed by article III, section 22 of the West Virginia Constitution, known as the "Right to Keep and Bear Arms Amendment."

Syllabus Point 4, *State ex rel. City of Princeton v. Buckner, supra*.

Independent of its ongoing litigation efforts, WVCDL has pursued and continues pursuing legislative measures to reflect its views of what are just and reasonable laws. However, the types of laws WVCDL prefers are obviously far more narrowly-tailored than Defendants prefer. WVCDL strongly believes an individual's right to self-defense should extend to all public buildings owned or controlled by state and local government agencies and other publicly-owned property. It has long been a settled matter of law that an individual has no specific right to police protection. The last potential, meaningful right that an individual has to protect him- or herself from a criminal attack is the right to self-defense and the means to do so. When seconds count, the police are only minutes away. So-called "gun-free zones" generally amount to little more than criminal protection zones that instill a false sense of security in unsuspecting members of the public and provide criminals and deranged lunatics a free fire zone for the duration of the police response time.

WVCDL also recognizes that some public buildings—such as court facilities, *see* McNeely, 89 W.Va. L. Rev. at 1149, 1180—have sensitive security considerations that may legitimately warrant the exclusion of weapons from the premises. However, without metal detectors, armed guards, and other meaningful, adequate security measures (similar to airports and federal courthouses), attempting to prohibit carrying weapons is a futile task, as criminals will carry regardless of any signs or additional criminal charges. As the proponents of the West Virginia Right to Keep and Bear Arms amendment stated:

> There is no social interest in preserving the lives and wellbeing of criminal aggressors at the cost of their victims. The only defensible policy society can adopt is one that will operate as a sanction against unlawful aggression. The police have no duty to protect the individual. *Warren v. District of Columbia*,

24

444 A.2d 1 (D.C. App. 1981) (en banc). One court reduced this principle of law to the succinct comment that "there is no constitutional right to be protected by the state against being murdered by criminals or madmen." *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982).

The proposed guarantee is a victims' rights measure. It will guarantee that a person may exercise the choice to have arms to lawfully and effectively resist violent criminal aggression against self, family, or home.

McNeely, 89 W.Va. L. Rev. at 1177-78. For these reasons, WVCDL has advocated legislation, based in part upon Col. Rev. Stat. § 18-12-214(4) (2003), that would authorize any state or local government agency—including Defendants—to restrict or prohibit the possession or carrying of weapons in a "secure restricted access area" of any public building where specified security measures are in place. *See generally*, 2011 W.Va. House Bill 3125; 2011 W.Va. Senate Bill 543; WVCDL, *West Virginia Gun Owner Protection Act of 2011*, http://www.wvcdl.org/WVCDLbills/WVGOPA2011.html (last accessed Apr. 29, 2011). Unfortunately, at this time, even if Defendants adopted or wanted to adopt the proposed security measures outlined in proposed W.Va. Code § 61-7-11c of HB 3125 and SB 543, they lack appropriate statutory authorization to do so for the reasons stated in Part III.B., *supra*. Thus, this type of option is beyond this court's power to grant in this action.

For the foregoing reasons, WVCDL respectfully submits that it has stated in Count 4 of its Complaint claims upon which relief can be granted.

### D. Martinsburg City Code § 545.14 is unconstitutional under the Second Amendment.

To the extent it operates as a complete prohibition on bearing arms in city buildings, Martinsburg City Code § 545.14 violates the right of WVCDL's members to keep and bear arms under the Second and Fourteenth Amendments to the United States Constitution. "[T]he core right identified in [*District of Columbia v.*] *Heller* [is] the right of a law-abiding, responsible

citizen to possess and carry a weapon for self-defense[.]" *Chester*, 628 F.3d at 683.  As discussed in Part III.C., *supra*, the WVCDL members whose interests are at stake in this action are precisely the type of "law-abiding, responsible citizen[s]" who enjoy the highest level of protection of their individual right to keep and bear arms.

"Self-defense is a basic right, recognized by many legal systems from ancient times to the present day, and in *Heller*, we held that individual self-defense is 'the central component' of the Second Amendment right." *McDonald*, 561 U.S. at ___, 130 S.Ct. at 3036 (*quoting Heller*, 554 U.S. at 599, 628) (footnote omitted).  "[I]t is clear that . . . the right to keep and bear arms [is] among those fundamental rights necessary to our system of ordered liberty[,]" *id.* at ___, 130 S.Ct. at 3042, and "this right is deeply rooted in this Nation's history and tradition." *Id.* at ___, 130 S.Ct. at 3036 (internal quotation marks and citation omitted).

At this point, WVCDL must acknowledge that its Second Amendment claim is at odds with the 4th Circuit's recent decision in *U.S. v. Masciandaro*, ___ F.3d ___, 2011 WL 1053618 (4th Cir. Mar. 24, 2011).  Although the primary panel opinion in *Masciandaro* was authored by Judge Niemeyer, Judge Wilkinson, writing for the majority of the panel, cut off the Second Amendment right to bear arms at the walls of the home. 2011 WL 1053618 at *16-17.  Not content to academically lambaste *Heller* as the Supreme Court's worst and most "activist" decision since *Roe v. Wade, supra*, *see* Judge J. Harvie Wilkinson, III, *Of Guns, Abortions, and the Unraveling Rule of Law*, 95 Va. L. Rev. 253 (2009), available at http://www.virginialawreview.org/content/pdfs/95/253.pdf, and fully accept it as the law of the land, Judge Wilkinson used *Masciandaro* as a platform to completely misconstrue the limited relief sought by Mr. Heller and Mr. McDonald to deny the obvious individual right to keep and bear arms beyond the walls of the home the Supreme Court clearly saw in its dicta.  The

*Masciandaro* panel majority opinion is devoid of any serious legal analysis on this point, which Judge Niemeyer rightfully criticized,  2011 WL 1053618 at *10 fn, as disregarding the need to "allow[] difficult issues to mature through full consideration by the courts of appeals." *E. I. du Pont de Nemours & Co. v. Train*, 430 U.S. 112, 135 n. 26 (1977).   Moreover, the leading authority the *Masciandaro* panel majority cited for punting to the Supreme Court the question of whether the Second Amendment applies outside the home, *Williams v. State*, 417 Md. 479, 10 A.3d 1167, 1177 (2011), is the subject of a pending petition for *cert*. 79 USLW 3594 (Apr. 5, 2011) (No. 10-1207). Given the recency and unsettled nature of the *Masciandaro* panel opinion and its supporting legal authority, WVCDL respectfully submits that this Honorable Court should not base its decision regarding Count 3 of the Complaint on the *Masciandaro* panel decision at this time, but instead allow proceedings in this action to continue until this Court has the benefit of a final decision in *Masciandaro* and the disposition of the *cert* petition in *Williams v. Maryland*.

Facial challenges to a statute or regulation based on overbreadth are recognized in a number of different settings, including but not limited to the First Amendment. *See Sabri v. United States*, 541 U.S. 600, 610 (2004) (collecting cases). *See also Chester*, 628 F.3d at 682 (First Amendment a guide in developing standards of review for the Second Amendment). The overbreadth doctrine should apply to constitutional challenges involving the Second Amendment just as West Virginia's courts apply it to W.Va. Const. Art. III, § 22. *Buckner*, 180 W.Va. at 462, 377 S.E.2d at 144. Martinsburg City Code § 545.14 creates an impermissible presumption that anyone who is carrying a firearm in a manner otherwise compliant with federal and state law nevertheless becomes inherently dangerous by crossing the threshold of a doorway into any building owned by the City of Martinsburg.

Because WVCDL members are among the class of "law-abiding, responsible citizen[s,]" *Chester*, 628 F.3d at 683, who enjoy the highest level of protection of their individual right to keep and bear arms and the right to keep and bear arms is a fundamental right, *McDonald*, 130 S.Ct. at 3036, 3042; *Heller*, 554 U.S. at 599, 628, WVCDL submits that its Second Amendment claim against Martinsburg City Code § 545.14 must be analyzed under strict scrutiny. "[C]lassifications affecting fundamental rights are given the most exacting scrutiny." *Clark v. Jeter*, 486 U.S. 456, 461 (1988) (internal citation omitted).   Because WVCDL members are among the class of "law-abiding, responsible citizen[s,]" *Chester*, 628 F.3d at 683, who enjoy the highest level of protection of their individual right to keep and bear arms, *Chester's* holding adopting intermediate scrutiny for a challenge to the federal prohibition on possession of firearms by domestic violence misdemeanants is inapposite.   To withstand the strict scrutiny analysis, Defendants must prove that they have a compelling interest that relates to the restriction at issue and must demonstrate that they has narrowly tailored the challenged ordinance so as to minimize the burden on people's rights while furthering that compelling interest. *Abrams v. Johnson*, 521 U.S. 74, 82 (1997). While public safety may be a compelling interest, Martinsburg's firearm prohibition whose primary enforcement mechanism is apparently a few signs on the doors and a low-level misdemeanor criminal penalty whose applicability is far from clear serves only to deter the most "law-abiding, responsible citizen[s,]" *Chester*, 628 F.3d at 683, from exercising their right to keep and bear arms and is certainly not narrowly tailored. Defendants are not entitled to presume without proof that the practice of the constitutionally-protected right to bear arms is inherently dangerous. "[T]he enshrinement of constitutional rights necessarily takes certain policy choices off the table." *Heller*, 554 U.S. at 636. Defendants cannot meet their burden.

Even if intermediate scrutiny is applicable, "the government must demonstrate under the intermediate scrutiny standard that there is a reasonable fit between the challenged regulation and a substantial government objective." *Chester*, 628 F.3d at 683 (internal quotation marks and citations omitted).  It is the Defendants' burden to prove that the ordinance furthers public safety. *See Giovani Carandola, Ltd. v. Fox*, 470 F.3d 1074, 1082 (4th Cir. 2006). Regardless of the level of scrutiny, Defendants cannot meet their burden.

For the foregoing reasons, WVCDL respectfully submits that it has stated in Count 3 of its Complaint claims upon which relief can be granted.

## IV. CONCLUSION

For the reasons stated above, WVCDL respectfully requests that this Honorable Court deny Defendants' pre-answer motion to dismiss and direct Defendants to answer WVCDL's Complaint pursuant to Fed. R. Civ. P. 12(a)(4)(A).  Alternatively, WVCDL requests leave to file an amended Complaint should this Honorable Court find any insufficiency in its Complaint.

Dated this 29th day of April, 2011,

s/ James M. Mullins, Jr.
James M. Mullins, Jr.      (WV State Bar # 11129)
Attorney for Plaintiff
The Law Offices of James M. Mullins, Jr., PLLC
101 North Kanawha Street, Suite 401
Beckley, WV 25801
Telephone: 304-929-3500 (o)/304-687-5492 (c)
FAX: 304-929-3503
E-mail: jim@mullinslawoffices.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 29, 2011, I electronically filed the foregoing document with the Clerk of the Court, which will send electronic notification of such filing to the following CM/ECF participant:

> Floyd M. Sayre, III
> Bowles, Rice, McDavid, Graff & Love, LLP
> PO Box 1419
> Martinsburg, WV 25402
> Attorney for All Defendants

    s/ James M. Mullins, Jr.
James M. Mullins, Jr.      (WV State Bar # 11129)
    Attorney for Plaintiff
The Law Offices of James M. Mullins, Jr., PLLC
101 North Kanawha Street, Suite 401
Beckley, WV 25801
Telephone: 304-929-3500 (o)/304-687-5492 (c)
FAX: 304-929-3503
E-mail: jim@mullinslawoffices.com
