IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT MARTINSBURG

West Virginia Citizens Defense League, Inc.,

        Plaintiff,

        v.

City of Martinsburg, *et al.*, Defendants

Civil Action No.: 3:11-cv-5-JPB

(Bailey, C.J.)

## **Plaintiff's Reply to Defendants' Memorandum in Support of Abstention**

The Plaintiff, West Virginia Citizens Defense League, Inc. (hereinafter "WVCDL"), by and through its undersigned counsel, respectfully submits the following in reply to Defendants' Memorandum In Support Of Abstention, [Doc. 20].

## **I. *Pullman* Abstentions Should Be Rarely Invoked.**

The *Pullman* abstention doctrine has its origins in *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941). In *Pullman*, the Supreme Court considered state law and constitutional challenges to a newly enacted order by the Texas Railroad Commission, which would have required that "a federal court of equity. . . decide an issue by making a tentative answer which may be displaced tomorrow by a state adjudication." *Id.* at 500 (citations omitted). In abstaining, the Supreme Court explained that "[f]ew public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies," and that a review of case law "reflect[s] a doctrine of abstention appropriate to our federal system whereby the federal courts, exercising a wise discretion, restrain their authority because of scrupulous

1

regard for the rightful independence of the state governments and for the smooth working of the federal judiciary." *Id.* at 500-01 (citations omitted).

*Pullman* abstention is appropriate "when a plaintiff brings a federal case that would require the federal court to interpret an unclear state law." *Nivens v. Gilchrist*, 444 F.3d 237, 246 (4th Cir. 2006) (*citing Pullman*, 312 U.S. at 498-99). "*Pullman* abstention serves two primary goals: (1) avoiding constitutional questions when their resolution is unnecessary, and (2) allowing state courts to decide issues of state law." *Id.* at 246 n. 6 (*citing Pullman*, 312 U.S. at 500); *see also Virginia Office for Protection and Advocacy v. Stewart*, 563 U.S. ___, ___, 131 S. Ct. 1632, 1644 (2011) (Kennedy, J., concurring) ("*Pullman* recognizes the importance of state sovereignty by limiting federal judicial intervention in state affairs to cases where intervention is necessary. If an open question of state-law would resolve a dispute, then federal courts may wait for the resolution of the state-law issue before adjudicating the merits. Likewise, certification of questions of state law to the state courts may pretermit an otherwise sensitive federal controversy.")).

The Fourth Circuit and Supreme Court cases analyzing *Pullman* direct that abstention is unwarranted here, and that this Court should exercise its Congressionally-given jurisdiction over this case. "[A] plaintiff's choice of forum is . . . entitled to respect and deference[.]" *In re Carefirst of Maryland, Inc.*, 305 F.3d 253, 260 (4th Cir. 2002). WVCDL chose to sue in this Court and has chosen to remain here despite the potential for abstention.

Abstention doctrines, including *Pullman*, "constitute extraordinary and narrow exceptions to a federal court's duty to exercise the jurisdiction conferred on it." *Martin v. Stewart*, 499 F.3d 360, 363 (4th Cir. 2007) (*quoting Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, 728 (1996) (alteration marks and internal quotation marks omitted)). "[F]ederal courts have a strict

2

duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush*, 517 U.S. at 716. "This Court repeatedly has stated that the federal courts have a virtually unflagging obligation to exercise their jurisdiction except in those extraordinary circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." *Deakins v. Monaghan*, 484 U.S. 193, 203 (1988) (*quoting Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817 (1976), *quoting County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959)) (internal quotation marks omitted). "Federal courts 'have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not.'" *Chase Brexton Health Services, Inc. v. Maryland*, 411 F.3d 457, 462 (4th Cir. 2005) (*quoting Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821)).

In this case, Congress has conferred jurisdiction over all of WVCDL's claims because, as WVCDL pleaded in its Complaint, this Court has "supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because they are so related to the federal question claims that they form part of the same case or controversy under Article III of the United States Constitution." [Doc. 3] at 3 ¶ 12.  WVCDL's invocation of § 1367 was appropriate. *See* 28 U.S.C. § 1367(a); *Arrington v. City of Raleigh*, 369 Fed. Appx. 420, 423 n. 1 (4th Cir. 2010) ("District courts have supplemental jurisdiction over state law claims that 'form part of the same case or controversy' as the federal claim supporting removal." (*quoting* 28 U.S.C. § 1367(a))).

## II. Existence of Similar Issues of Federal and State Law Insufficient Grounds to Abstain.

As this Court has already noted, "the West Virginia constitutional provision, Article III, § 22, differs from and is not the 'mirror image' of the Second Amendment to the United States

3

Constitution." [Doc. 16] at 8. Nevertheless, *Pullman* abstention is not required simply because a similar state constitutional issue is raised in the same case as a federal constitutional claim. "The presence of parallel state and federal constitutional claims does not in itself provide sufficient reason for a federal court to abstain." *National Capital Naturists, Inc. v. Board of Sup'rs of Accomack County, Va.*, 878 F.2d 128, 133 (4th Cir. 1989) (*citing Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 237 n. 4 (1984); *Examining Board of Engineers v. Flores De Otero*, 426 U.S. 572, 598 (1976)). The Supreme Court addressed this question head on in *Flores de Otero*, which concerned a challenge to a Puerto Rico statute under both the United States and Puerto Rico constitutions. Appellants in *Flores de Otero* urged the Supreme Court to abstain on the grounds that the courts of Puerto Rico should be permitted to adjudicate the challenged statute under the sections of the Puerto Rico Constitution providing that "No discrimination shall be made on account of race, color, sex, birth, social origin or condition, or political or religious ideas," and "No person in Puerto Rico shall be denied the equal protection of the laws". 426 U.S. at 598. The Supreme Court refused, reasoning that to "hold that abstention is required because [the challenged statute] might conflict with the cited broad and sweeping constitutional provisions, would convert abstention from an exception into a general rule." *Id.*

### III. Certification is Preferred to Abstention.

In their response urging this Court to exercise *Pullman* abstention, the Defendants ignored the modern preference of the Supreme Court for utilizing state certification procedures in lieu of abstention where certification is available. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 75-76, 79 (1997); *see also Virginia Office for Protection and Advocacy*, 563 U.S. at ___, 131 S. Ct. at 1644 (Kennedy, J., concurring) ("certification of questions of state

4

law to the state courts may pretermit an otherwise sensitive federal controversy"); *Virginia v. American Booksellers Assn., Inc.*, 484 U.S. 383, 393-98 (1988) (certifying questions of law to Virginia Supreme Court, noting that abstention is "more cumbersome and . . problematic"); *Lehman Brothers v. Schein*, 416 U.S. 386, 391 (1974) (certification "helps build a cooperative judicial federalism"); *Bellotti v. Baird*, 428 U.S. 132, 148 (1976) (to warrant district court certification, "[i]t is sufficient that the statute is susceptible of . . . an interpretation [that] would avoid or substantially modify the federal constitutional challenge to the statute") (remanding with instructions to certify questions pertaining to construction of a state statute that was susceptible to multiple interpretations, one of which would avoid or substantially modify a federal constitutional challenge).

The defendants reply upon *International Eateries of America, Inc. v. Board of County Com'rs of Broward County, Fla.*, 838 F.Supp. 580 (S.D. Fla. 1993), to argue that the existence of allegedly complex issues of state law compels abstention under the *Pullman* doctrine. *International Eateries* is inapposite on this point. *International Eateries* involved the invocation of abstention and remanding to state court a complex case involving four separate suits that were originally filed in state court and removed to federal court. *Id.* at 581-82. The four separate suits challenged both the substance and the procedures followed by the Board of County Commissioners of Broward County in enacting an extensive regulatory regime for adult bookstores and other adult-oriented businesses. *Id.* The four suits originally filed in state court claimed varying and differing legal theories. *Id.* at 583. The court found abstention appropriate under not only the *Pullman* doctrine but also the *Burford* doctrine, as "the case involves *many* difficult and unresolved questions of state law." *Id.* (emphasis added). Moreover, as they have done before, the Defendants again nakedly assert that their position is supported by state law or,

5

alternatively, that state law is sufficiently unclear and the questions presented are sufficiently novel and complex to merit abstention.  Unlike the numerous, complex questions of law and fact that supported multiple grounds for abstention in *International Eateries*, this case involves a substantive challenge to a single ordinance by a single litigant where there are few—if any—questions of fact to be answered, leaving only a few potential questions of state law that should lend themselves to resolution via West Virginia's certification process.

Abstaining on the grounds argued by the Defendants will merely result in the parties litigating this matter in the Berkeley County Circuit Court.  The Berkeley County Circuit Court suffers from an oppressively overcrowded docket.  *See, e.g.,* Matthew Umstead, *Judge Wants Night Sessions*, The Herald-Mail (Hagerstown, Md.), Aug. 3, 2011, at B1, available at http://www.herald-mail.com/news/tristate/hm-circuit-judge-seeks-nighttime-court-sessions-to-handle-caseload-20110731,0,1323037.story.  The parties face the prospect of significant delays in unnecessary state court litigation.  To the extent the controlling state law is unclear, the Berkeley County Circuit Court, like this Court, may certify appropriate questions of law to the West Virginia Supreme Court of Appeals.  W.Va. Code § 58-5-2; W.Va. Rev. R. App. P. 17(a) (2010).  Regardless of whether the questions presented in this case are presented to the West Virginia Supreme Court of Appeals through certified questions of this Court, certified questions of the Berkeley County Circuit Court (should this Court abstain), or the direct appeal of a judgment of the Berkeley County Circuit Court (should this Court abstain and the case be fully litigated in state court without state court certification), if the West Virginia Supreme Court of Appeals reviews the questions presented in this case, it will undertake a *de novo* review of the

challenged ordinance and the state statutory and constitutional provisions at issue.[1] "Certification procedure, in contrast [to abstention], allows a federal court faced with a novel state-law question to put the question directly to the State's highest court, reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response." *Arizona*, 520 U.S. at 76 (internal citations omitted).

Given the likelihood that this case will result in future certification activity, WVCDL questions for the moment whether this case has fully ripened for certification. Defendants have yet to advance any clear, coherent legal arguments that make even a minimal showing that the challenged ordinance is lawful under state law. *See generally* [Doc. 19] at 2-5. Additionally, certification requires "a sufficiently precise and undisputed factual record on which the legal issues can be determined . . . . [and that] such legal issues . . . substantially control the case." Syllabus Point 5, in part, *Bass v. Coltelli*, 192 W.Va. 516, 453 S.E.2d 350 (1994), *superseded by statute on other grounds, Smith v. Consol. Public Retirement Bd.*, 222 W.Va. 345, 348 n. 3, 664 S.E.2d 686, 689 n. 3 (2008); *see also* W.Va. Code § 51-1A-6(a)(2) ("A certification order must contain . . . [t]he facts relevant to the question, showing fully the nature of the controversy out of which the question arose[.]").

---

[1] *Citizens Bank of Weston, Inc. v. City of Weston*, 209 W.Va. 145, 148, 544 S.E.2d 72, 75 (2001) ("a *de novo* standard of review applies to the issue of the constitutionality of [a municipal] ordinance"); Syllabus Point 1, *State v. Rutherford*, 223 W.Va. 1, 672 S.E.2d 137 (2008) ("The constitutionality of a statute is a question of law which this Court reviews *de novo*."). Syllabus Point 1, *Bower v. Westinghouse Electric Corp.*, 206 W.Va. 133, 522 S.E.2d 424 (1999) ("This Court undertakes plenary review of legal issues presented by certified question from a federal district or appellate court."); Syllabus Point 1, *Light v. Allstate Ins. Co.*, 203 W.Va. 27, 506 S.E.2d 64 (1998) ("A *de novo* standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court."); Syllabus Point 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996) ("The appellate standard of review of questions of law answered and certified by a circuit court is *de novo*."); Syllabus Point 1, *West Virginia Human Rights Commission v. Garretson*, 196 W.Va. 118, 468 S.E.2d 733 (1996) ("Interpreting a statute presents a purely legal question subject to our *de novo* review on which neither party bears the burden of proof."); Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").

Nevertheless, WVCDL reserves the right to file a motion for certification, even at this early stage of the litigation. The West Virginia Supreme Court of Appeals has, on occasion, answered certified questions arising from pre-answer motions to dismiss under Fed. R. Civ. P. 12(b)(6), e.g., *Barr v. NCB Management Services, Inc.*, ___ W.Va. ___, 711 S.E.2d 577 (2011); *L.H. Jones Equipment Co. v. Swenson Spreader LLC*, 224 W.Va. 570, 687 S.E.2d 353 (2009); *Arbaugh v. Board of Educ., County of Pendleton*, 214 W.Va. 677, 591 S.E.2d 235 (2003); *Feliciano v. 7-Eleven, Inc.*, 210 W.Va. 740, 559 S.E.2d 713 (2001); *Bower v. Westinghouse Elec. Corp.*, 206 W.Va. 133, 522 S.E.2d 424 (1999), as West Virginia law does not limit certification to cases in which all underlying facts have been fully and conclusively developed in the certifying court.[2] In some cases, early certification of questions may prove dispositive of the case and spare the litigants and the certifying court significant expenditures of time, money, and other finite resources that can be saved by an early answer to a critical question of state law.[3]

Of course, certification should not be undertaken lightly. "[F]ederal courts should take care not to burden their state counterparts with unnecessary certification requests." *Boyter v. C. I. R.*, 668 F.2d 1382, 1385 n. 5 (4th Cir. 1981). "Only if the available state law is clearly insufficient should the court certify the issue to the state court." *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994) (citation omitted). "W.Va. Code §§ 51-1A-1, *et seq.*, relating to the certification

---

[2] W.Va. Code § 51-1A-6(b) encourages the parties to "agree upon a statement of facts," but, in the absence of an agreement, "the certifying court shall determine the relevant facts and shall state them as a part of its certification order[,]" *id.*, and, for the purposes of answering certified questions, the West Virginia Supreme Court of Appeals "must assume the findings of fact of the district court are correct." *Mutafis v. Erie Ins. Exchange*, 174 W.Va. 660, 663, 328 S.E.2d 675, 678 (1985).

[3] The question certified in *Barr* proved so pivotal that the parties promptly settled after the West Virginia Supreme Court of Appeals answered the question certified by this Court. *See* Order Dismissing Case, [Doc. 47], *Barr v. NCB Management Services, Inc.*, No. 3:10-cv-60 (N.D. W.Va. July 19, 2011); Steve Korris, *Borrower Settles Key Debt Collector Suit*, West Virginia Record, July 22, 2011, http://www.wvrecord.com/news/237047-borrower-settles-key-debt-collector-suit.

8

of questions of law to this Court from foreign courts, does not impose an absolute duty on this Court to answer such questions." Syllabus Point 1, *Abrams v. West Virginia Racing Commission*, 164 W.Va. 315, 263 S.E.2d 103 (1980). "In a certified case, this Court will not consider certified questions not necessary to a decision of the case." Syllabus Point 7, *Shell v. Metropolitan Life Ins. Co.*, 181 W.Va. 16, 380 S.E.2d 183 (1989) (*quoting* Syllabus Point 6, *West Virginia Water Serv. Co. v. Cunningham*, 143 W.Va. 1, 98 S.E.2d 891 (1957)).

For these reasons and the reasons WVCDL has previously argued, [Doc. 19] at 5-8, WVCDL submits that the proper course for addressing any questions of state law where "there is no controlling appellate decision, constitutional provision or statute of this state," W.Va. Code § 51-1A-3, is for this Court to certify appropriate questions of law to the West Virginia Supreme Court of Appeals.[4]

## IV. Reservation of Right to Federal Court Adjudication of Questions of Federal Law.

Should this Court nevertheless determine to abstain from consideration of the state law issues presented, WVCDL reserves the right to adjudication of the issues of federal law presented in Counts 1 and 2 of its Complaint in this Court. In *England v. Louisiana State Bd. of*

---

[4] In contemplation of future certification activity, WVCDL's counsel has recently invited opposing counsel to negotiate stipulations of undisputed facts. While WVCDL reserves the right to seek certification on the basis of the facts alleged in the Complaint and declarations in the record, WVCDL believes at this point that the parties and their counsel should have additional time to attempt to negotiate stipulations of facts (e.g., any factual basis the Defendants may have established to justify the challenged ordinance under the state constitution and other facts the Defendants may wish to establish that could reasonably aid the West Virginia Supreme Court of Appeals in analyzing the constitutionality of the challenged ordinance, assuming *arguendo* the Defendants clear the very high bar of proving beyond a reasonable doubt that they have affirmative statutory authorization by the Legislature to enact and maintain the challenged ordinance as a matter of state statutory and common law) to provide as complete a record as possible and minimize the need for the West Virginia Supreme Court of Appeals to proceed under *Mutafis* assumptions.

*Medical Examiners*, 375 U.S. 411, 421-22 (1964), the Supreme Court held that after a federal court has abstained under the *Pullman* doctrine in order to obtain an authoritative interpretation of state law that could potentially moot or influence the federal constitutional questions presented, parties who have been remitted to state court against their will are not required to litigate their federal claims in state court, but may reserve the right to a federal adjudication of these claims. A reservation of rights under *England* "may be made by any party to the litigation." *Id.* at 422 n. 13.

## V. Conclusion.

For the reasons stated above, WVCDL respectfully requests that this Honorable Court not abstain from adjudicating WVCDL's state law claims against the Defendants. To the extent there are unsettled questions of state law, WVCDL submits that, rather than exercising *Pullman* abstention, the more appropriate course of action is to certify appropriate questions of law to the West Virginia Supreme Court of Appeals. WVCDL further requests that this Honorable Court deny the Defendants' pre-answer motion to dismiss for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) or, in the alternative, expressly postpone a ruling thereon until trial pursuant to Fed. R. Civ. P. 12(a)(4)(A), and direct Defendants to answer WVCDL's Complaint accordingly.

Dated this 11th day of August, 2011,

    s/ James M. Mullins, Jr.
James M. Mullins, Jr.        (WV State Bar # 11129)
    Attorney for Plaintiff
The Law Offices of James M. Mullins, Jr., PLLC
101 North Kanawha Street, Suite 401
Beckley, WV 25801
Telephone: 304-929-3500 (o)/304-687-5492 (c)
FAX: 304-929-3503
E-mail: jim@mullinslawoffices.com

## Certificate of Service

I hereby certify that on August 11, 2011, I electronically filed the foregoing document with the Clerk of the Court, which will send electronic notification of such filing to the following CM/ECF participant:

Floyd M. Sayre, III
Bowles, Rice, McDavid, Graff & Love, LLP
PO Box 1419
Martinsburg, WV 25402
Attorney for All Defendants

    s/ James M. Mullins, Jr.
James M. Mullins, Jr.        (WV State Bar # 11129)
    Attorney for Plaintiff
The Law Offices of James M. Mullins, Jr., PLLC
101 North Kanawha Street, Suite 401
Beckley, WV 25801
Telephone: 304-929-3500 (o)/304-687-5492 (c)
FAX: 304-929-3503
E-mail: jim@mullinslawoffices.com