IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT MARTINSBURG

West Virginia Citizens Defense League, Inc.,

        Plaintiff,

              v.

City of Martinsburg, *et al.*, Defendants

Civil Action No. 3:11-cv-5-JPB

(Bailey, C.J.)

# Plaintiff's Memorandum of Law in Support of

# Plaintiff's Motion for Partial Summary Judgment

The Plaintiff, West Virginia Citizens Defense League, Inc. (hereinafter "WVCDL"), by and through its undersigned counsel, respectfully submits the following in support of its motion for partial summary judgment pursuant to Fed. R. Civ. P. 56 and requests for declaratory and permanent injunctive relief contained therein.

# I. Summary Judgment Standard.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Thus, the court must conduct "the threshold inquiry of determining whether there is the need for a trial—whether, in other words,

1

there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

In applying this standard, the court must review all the evidence "in the light most favorable to the nonmoving party." *Celotex*, 477 U.S. at 322-23. The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. *Anderson*, 477 U.S. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The sufficiency of the evidence to create an issue of fact for the jury is solely a question of law." *Houston v. Reich*, 932 F.2d 883, 888 (10th Cir. 1991), *quoted in Williams v. West Virginia University Bd. of Governors*, ___ F.Supp.2d ___, 2011 WL 830620 at *5 (N.D. W.Va. 2011) (Bailey, C.J.). The court does not have to accept "unwarranted inferences, unreasonable conclusions, or arguments" as true factual allegations. *Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership*, 213 F.3d 175, 180 (4th Cir. 2000) (*citing* 5A Wright & Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990 and Supp. 1998)).

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 323-25; *Anderson*, 477 U.S. at 248. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. "[T]he mere

existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient" to establish the existence of a genuine issue of fact. *Id.* at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249 (citations omitted).

"Unsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citations omitted). "[G]enuine issues of material fact cannot be based on mere speculation or the building of one interference upon another." *Barwick v. Celotex Corp.*, 736 F.2d 946, 963 (4th Cir. 1984). Evidence supporting a claim in opposition of a summary judgment motion "must consist of facts which are material, meaning that the facts might affect the outcome of the suit under applicable law, as well as genuine, meaning that they could create fair doubt rather than encourage mere speculation." *Panrell v. UMWA*, 872 F.Supp. 1502 (N.D. W.Va. 1995) (*citing Anderson*, 477 U.S. at 248; *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985)). The party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of her pleadings, but must instead set forth specific facts illustrating genuine issues for trial. *Celotex*, 477 U.S. at 322-24. "[T]o preclude summary judgment, the non-movant must cite to admissible evidence to show that a genuine issue of material fact exists." *Warden v. PHH Mortg. Corp.*, ___ F.Supp.2d ___, 2011 WL 2619617 at *5 (N.D. W.Va. 2011) (Bailey, C.J.) (*citing* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.")).

3

## II. Statement of Facts.

1. WVCDL is a West Virginia nonprofit corporation. First Amended Complaint, [Doc. 25] (hereinafter "FAC") ¶ 1; Declaration of Arthur Thomm, II, [Doc. 14-1] (hereinafter "Thomm Dec.") ¶ 4.

2. WVCDL is a nonpartisan, all-volunteer, grassroots organization of concerned West Virginians who support an individual's right to keep and bear arms for defense of self, family, home and state, and for lawful hunting and recreational use, as protected by the West Virginia Constitution and the Second Amendment of the United States Constitution. FAC ¶ 2; Thomm Dec. ¶ 5.

3. WVCDL has members throughout the State of West Virginia, including many members who reside in or frequently visit the City of Martinsburg. FAC ¶ 3; Thomm Dec. ¶ 6.

4. Arthur Thomm, II (hereinafter "Mr. Thomm"), is a natural person who currently resides in, and at all times relevant in this case has resided in, Berkeley County, West Virginia. FAC ¶ 14; Thomm Dec. ¶ 2.

5. Mr. Thomm is, and at all times relevant in this case has been, a member of WVCDL. FAC ¶ 15; Thomm Dec. ¶ 3.

6. Mr. Thomm and many other WVCDL members have licenses to carry concealed handguns. FAC ¶ 16; Thomm Dec. ¶¶ 7-8.

7. Mr. Thomm and many other WVCDL members regularly carry handguns for personal protection at all times and places they may lawfully do so; only when a federal, state, or local law or regulation whose enforcement has not been enjoined by a court of competent jurisdiction prohibits carrying a handgun at a particular time or place do Mr. Thomm and

4

some other WVCDL members not carry a handgun on their persons. FAC ¶ 17; Thomm Dec. ¶¶ 9-10.

8. Mr. Thomm is a regular visitor to the Habenero Mexican Grill, which is located in a building owned by the City of Martinsburg, located at 100 North Queen Street in the City of Martinsburg. FAC ¶ 18; Thomm Dec. ¶ 11.

9. Defendant City of Martinsburg is a municipal corporation organized under the constitution and laws of the State of West Virginia. FAC ¶ 4; Defendants' Answer to the Plaintiff's First Amended Complaint, [Doc. 26] (hereinafter "Ans.") ¶ 4.

10. The City of Martinsburg, through its city manager and police department, is responsible for executing and administering the laws, customs, practices, and policies at issue in this action. FAC ¶ 5; Ans. ¶ 5.

11. Martinsburg City Code § 545.14 provides:

> (a) No person shall carry or possess a firearm or other deadly weapon, whether carried openly or concealed, in any building owned, leased or under the care, custody and control of the City of Martinsburg or any political subdivision of the City of Martinsburg.
>
> (b) No provision of this section shall apply to those persons set forth in Section 545.03 (c) to (f) while such persons are acting in an official capacity, provided, however, that under no circumstances may any person possess or carry or cause the possession or carrying of any firearm or other deadly weapon on the premises of any primary or secondary educational facility in this State unless such person is a law enforcement officer or he or she has the express written permission of the County School Superintendent.
>
> (c) Any person carrying or possessing a firearm or other deadly weapon in any building owned, leased or under the care, custody and control of the City of Martinsburg or any political subdivision of the City of Martinsburg who refuses to temporarily relinquish possession of such firearm or other deadly weapon, upon being requested to do so, or to leave such premises, while in possession of such firearm or other deadly weapon, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00) for each offense and, in the discretion of the Police Court Judge, may be placed in jail for a term not to exceed thirty (30) days, or both.

FAC ¶ 12; Ans. ¶ 12.

12. The categories of persons specified in Martinsburg City Code § 545.03(c) to (f) are:

> (c) Any law-enforcement officer or law-enforcement official as such are defined in West Virginia Code 30-29-1;
>
> (d) Any employee of the West Virginia Department of Corrections duly appointed pursuant to the provisions of West Virginia Code 28-5-5 while such employee is on duty;
>
> (e) Any member of the armed forces of the United States or the militia of the State while such member is on duty;
>
> (f) Any circuit judge, including any retired circuit judge designated senior status by the supreme court of appeals of West Virginia, prosecuting attorney, assistant prosecuting attorney or a duly appointed investigator employed by a prosecuting attorney[.]

FAC ¶ 13; Ans. ¶ 13.

13. The main public entrances to most buildings owned by the City of Martinsburg are posted with conspicuous signs stating:

> No Firearms allowed per Martinsburg City Code 545.14. Any person carrying or possessing a firearm or other deadly weapon on any public property or in any building owned, leased or under the care, custody and control of the City of Martinsburg or any political subdivision of the City of Martinsburg who refuses to temporarily relinquish possession of such firearm or other deadly weapon, upon being requested to do so, or to leave such premises, while in possession of such firearm or other deadly weapon, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00) for each offense and, in the discretion of the Police Court Judge, may be placed in jail for a term not to exceed thirty (30) days, or both.

*See* FAC ¶ 19; Ans. ¶ 19; Thomm Dec. ¶ 12.

14. Martinsburg City Code § 545.14 prohibits the possession or carrying of firearms in not only city office buildings, but also many other buildings such as rest facilities in city parks, city-owned housing, and other public buildings that are not used primarily for performing the official business of the City of Martinsburg.  However, the Defendants

6

deny Plaintiff's characterization of any such buildings as "non-sensitive." *See* FAC ¶ 33; Ans. ¶ 33; Thomm Dec. ¶ 11; E-mail from Floyd M. Sayre, III, to James M. Mullins, Jr., Sep. 7, 2011, 4:13 PM (hereinafter "Sayre e-mail"), [Doc. 36-1].

15. The Defendants do not maintain in any building covered by Martinsburg City Code § 545.14, other than Martinsburg City Hall, any security measures under which individuals entering the building are required to pass through metal detectors or submit to other security screenings designed to detect and interdict the possession or carrying of firearms in violation of Martinsburg City Code § 545.14. The Defendants have alleged that metal detectors are in place at Martinsburg City Hall but no other buildings covered by Martinsburg City Code § 545.14. However, the precise nature of the security measures in place at Martinsburg City Hall and the adequacy of those measures for the purpose of protecting against the unauthorized possession or carrying of firearms have not been fully established. *See* FAC ¶ 34; Ans. ¶ 34; Thomm Dec. ¶ 16; Sayre e-mail.

16. The Defendants maintain laws, customs, practices, and policies that do not provide any means for individuals to temporarily check and store weapons in a secure storage facility prior to entering any buildings where Martinsburg City Code § 545.14 prohibits carrying weapons. FAC ¶ 35; Ans. ¶ 35; Thomm Dec. ¶ 17.

17. The Defendants' denial of the allegations in Paragraph 45 of the First Amended Complaint is based solely on their contention that the City of Martinsburg has maintained a variety of other ordinances predating June 1, 1999, relating to firearms and other weapons, none of which deal directly with the possession or carrying of firearms or other weapons in public buildings owned, leased, or controlled by the City of Martinsburg. *See* FAC ¶ 45; Ans. ¶ 45; Sayre e-mail.

# III. Argument.

Based on the pleadings, declarations, and exhibit on file, this case has ripened for partial summary judgment as to Counts 4, 5, and 6 of the First Amended Complaint.

## A. Martinsburg City Code § 545.14 is

## preempted and void as a matter of state law.

Martinsburg City Code § 545.14, which was first enacted in 2005 and amended into its current form in 2008, FAC ¶ 44; Ans. ¶ 44, is clearly void as a matter of state law because it is preempted by statute or, in the alternative, not affirmatively authorized by the Legislature by law.

> The provisions of section five of this article notwithstanding, neither a municipality nor the governing body of any municipality may limit the right of any person to purchase, possess, transfer, own, carry, transport, sell or store any revolver, pistol, rifle or shotgun or any ammunition or ammunition components to be used therewith nor to so regulate the keeping of gunpowder so as to directly or indirectly prohibit the ownership of the ammunition. Nothing herein shall in any way impair the authority of any municipality, or the governing body thereof, to enact any ordinance or resolution respecting the power to arrest, convict and punish any individual under the provisions of subdivision (16), section five of this article or from enforcing any such ordinance or resolution: *Provided*, That any municipal ordinance in place as of the effective date of this section shall be excepted from the provisions of this section: *Provided, however*, That no provision in this section may be construed to limit the authority of a municipality to restrict the commercial use of real estate in designated areas through planning or zoning ordinances.

W.Va. Code § 8-12-5a (1999); FAC ¶ 42; Ans. ¶ 42.[1]

---

[1] The reference to "the effective date of this section" in the first proviso of W.Va. Code § 8-12-5a was enacted as part of the most recent amendments to that section, which were enacted by the West Virginia Legislature as part of 1999 W.Va. Acts Ch. 290, which took effect on June 1, 1999, and thus "the effective date of this section" should be read as "June 1, 1999." FAC ¶ 43; Ans. ¶ 43.

"When a provision of a municipal ordinance is inconsistent or in conflict with a statute enacted by the Legislature the statute prevails and the municipal ordinance is of no force and effect." Syllabus Point 1, *Vector Co. v. Board of Zoning Appeals of City of Martinsburg*, 155 W.Va. 362, 184 S.E.2d 301 (1971).

> A municipal corporation has only the powers granted to it by the legislature, and any such power it possesses must be expressly granted or necessarily or fairly implied or essential and indispensable. If ***any*** reasonable doubt exists as to whether a municipal corporation has a power, the power ***must*** be denied.

Syllabus Point 2, *State ex rel. City of Charleston v. Hutchinson*, 154 W.Va. 585, 176 S.E.2d 691 (1970) (emphasis added). "As a general rule of statutory construction, if several statutory provisions cannot be harmonized, controlling effect must be given to the last enactment of the Legislature." Syllabus Point 2, *State ex rel. Department of Health and Human Resources v. West Virginia Public Employees Retirement System*, 183 W.Va. 39, 393 S.E.2d 677 (1990).

The West Virginia Supreme Court of Appeals has long recognized that municipalities derive their power from the Legislature and are subject to its strict control of their actions.

> Municipalities are but political subdivisions of the state, created by the Legislature for purposes of governmental convenience, deriving not only some, but all, of their powers from the Legislature. They are mere creatures of the Legislature, exercising certain delegated governmental functions which the Legislature may revoke at will. In fact, public policy forbids the irrevocable dedication of governmental powers. The power to create implies the power to destroy.

*Booten v. Pinson*, 77 W.Va. 412, 421, 89 S.E. 985, 989 (1915). In other words,

> [m]unicipalities are creatures of the State who draw their powers from the law which creates them; therefore, if a [municipal ordinance] conflicts with either our Constitution or our general laws, the [ordinance], being the inferior law, must fail.

*Marra v. Zink*, 163 W.Va. 400, 404, 256 S.E.2d 581, 584 (1979) (*citing Vector Co. v. Board of Zoning Appeals of City of Martinsburg, supra*). "A municipal corporation possesses no inherent police power. It has only such regulatory authority as has been expressly or impliedly delegated

to it by the Legislature." Syllabus Point 1, *State ex rel. Kelley v. City of Grafton*, 87 W.Va. 191, 104 S.E. 487 (1920).

> A municipal corporation is a creature of the State, and can only perform such functions of government as may have been conferred by the Constitution, or delegated to it by the law-making authority of the State. It has no inherent powers, and only such implied powers as are necessary to carry into effect those expressly granted.

Syllabus Point 1, *Brackman's Inc., v. City of Huntington*, 126 W.Va. 21, 27 S.E.2d 71 (1943).

The West Virginia Supreme Court of Appeals has long construed municipal powers with the most exacting scrutiny under which it maintains a strong presumption against the recognition of any power claimed by a municipality, which the municipality bears a heavy burden to overcome.

> Municipalities have no inherent power with regard to the exercise of the functions of their government. Such power depends **solely** upon grants of power by Acts of the Legislature, and the Legislature may at any time modify, change or withdraw any power so granted by general law in conformance with the provisions of the Constitution, Article VI, Section 39(a).

Syllabus Point 2, *State ex rel. Alexander v. County Court of Kanawha County*, 147 W.Va. 693, 130 S.E.2d 200 (1963) (emphasis added).

> A municipal corporation has only the powers granted to it by the legislature, and any such power it possesses must be expressly granted or necessarily or fairly implied or essential and indispensable. If **any** reasonable doubt exists as to whether a municipal corporation has a power, the power **must** be denied.

Syllabus Point 2, *State ex rel. City of Charleston v. Hutchinson, supra* (emphasis added).

"The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled." Syllabus Point 1, *UMWA by Trumka v. Kingdon*, 174 W.Va. 330, 325 S.E.2d 120 (1984). Neither the Municipal Code of West Virginia, nor any other provision of the West Virginia Code, whether enacted before or after 1999, provides a more specific measure that can

be construed to limit the preemption statute under *Trumka*. When the Legislature enacted the preemption statute, it made no exception for regulating firearms in municipal buildings. The only exceptions it created were a grandfather clause for existing ordinances and an exception for planning or zoning ordinances. W.Va. Code § 8-12-5a. *See also,* Phil Kabler, *Pro-gun bill likely to win*, Charleston Gazette, Jan. 19, 1999, at A1.

> In the interpretation of a statute, the legislative intention is the controlling factor; and the intention of the legislature is ascertained from the provisions of the statute by the application of sound and well established canons of construction.

Syllabus Point 2, *Meadows v. Wal-Mart Stores, Inc.*, 207 W.Va. 203, 530 S.E.2d 676 (1999). "The primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature." Syllabus Point 8, *Vest v. Cobb*, 138 W.Va. 660, 76 S.E.2d 885 (1953); *see also* Syllabus Point 1, *Smith v. State Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975) ("The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."). "Interpreting a statute presents a purely legal question subject to our *de novo* review on which neither party bears the burden of proof." Syllabus Point 1, *West Virginia Human Rights Commission v. Garretson*, 196 W.Va. 118, 468 S.E.2d 733 (1996).

The combination of the preemption statute and the strong presumption against the recognition of assertions of municipal authority provide a clear, unambiguous state policy against the enactment of any form of municipal ordinance restricting where, when, how, or by whom firearms may be purchased, possessed, transferred, owned, carried, transported, sold or stored. "Where the words of a statute are plain, free of ambiguity, conveying a plain intent, there is no room for construction by a court, but only for obedience to the legislative will." Syllabus Point 1, *Kelley & Moyers v. Bowman*, 68 W.Va. 49, 69 S.E. 456 (1910).

> When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute.

11

Syllabus Point 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars, supra.*

> When a statute is clear and unambiguous and the legislative intent is plain the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute.

Syllabus Point 1, *State ex rel. Fox v. Board of Trustees of the Policemen's Pension or Relief Fund of the City of Bluefield, et al.*, 148 W.Va. 369, 135 S.E.2d 262 (1964). "Judicial interpretation of a statute is warranted only if the statute is ambiguous and the initial step in such interpretative inquiry is to ascertain the legislative intent." Syllabus Point 1, *Ohio County Commission v. Manchin*, 171 W.Va. 552, 301 S.E.2d 183 (1983).

The application of the preemption statute against Martinsburg's ordinance is supported by the history of the preemption statute and municipal actions predating the preemption statute. Between 1993 and 1996, the cities of Charleston, South Charleston, and Dunbar enacted ordinances prohibiting the possession of firearms and other weapons on city-owned property.[2] The City of Charleston also enacted in 1993 ordinances heavily regulating the sale of handguns.[3] The Legislature was aware of these ordinances at the time it enacted the preemption statute and passed the preemption statute specifically to protect West Virginia gun owners from the expansion of these types of ordinances to other municipalities. "When viewing legislative actions, the substance of the act complained of, instead of its simple form, directs the ensuing analysis." *Napier v. Napier*, 211 W.Va. 208, 212, 564 S.E.2d 418, 422 (2002). The substance of the act complained of when the Legislature enacted the preemption statute was the threat of the proliferation of local ordinances throughout the state restricting firearms where the restricted

---

[2] WVCDL and several of its individual members are challenging these ordinances on other grounds independent of the preemption law. *See generally, West Virginia Citizens Defense League, et al., v. City of Charleston, et al.*, Civil Action No. 2:11-cv-48 (S.D. W.Va. filed Jan. 24, 2011).

[3] *Id.*

actions were otherwise lawful under federal and state law. In 1999, the Legislature chose to protect West Virginia gun owners from a patchwork quilt of local gun laws by driving a wooden stake through the heart of whatever sources of legal authority any municipality may have had to enact any ordinance limiting the right of a person to purchase, possess, transfer, own, carry, transport, sell or store any firearm. W.Va. Code § 8-12-5a (1999). Martinsburg's ordinance is a "direct, explicit attempt by the city to regulate an area that the State has preempted." *Longwell v. Hodge*, 171 W.Va. 45, 50, 297 S.E.2d 820, 825 (1982) (citation omitted).

For the foregoing reasons, WVCDL respectfully submits that Martinsburg City Code § 545.14 is preempted or, in the alternative, lacks appropriate affirmative statutory authorization by the Legislature under West Virginia's statutory and common law regarding the powers of municipalities, and is void as a matter of state law.

## B. Martinsburg City Code § 545.14 is unconstitutional under the West Virginia Right to Keep and Bear Arms Amendment.

Assuming *arguendo* that Martinsburg City Code § 545.14 is valid as a matter of state statutory and common law and survives the challenges in Counts 5 and 6 of WVCDL's First Amended Complaint, it is an overly broad ordinance that violates the right of WVCDL's members to keep and bear arms under W.Va. Const. Art. III, § 22.

> Article III, section 22 of the West Virginia Constitution was approved by the voters of this State on November 4, 1986, and succinctly states: "A person has the right to keep and bear arms for the defense of self, family, home and state, and for lawful hunting and recreational use."

*State ex rel. City of Princeton v. Buckner*, 180 W.Va. 457, 459, 377 S.E.2d 139, 141 (1988).

In its analysis of facial challenges to laws implicating an individual's right to keep and bear arms under W.Va. Const. Art. III, § 22, the West Virginia Supreme Court of Appeals, at a

time when the Second Amendment to the United States Constitution was neither regarded as an

individual right nor applicable to the states, *id.* at 460 n. 6, 377 S.E.2d at 142 n. 6, held that the

First Amendment overbreadth doctrine is applicable to laws implicating the right to keep and

bear arms and that the court would not attempt to judicially reform or salvage an overbroad law.

> An "overbroad" law, as that term has been developed by the United States
> Supreme Court, is not vague, or need not be. Its vice is not failure to
> communicate. Its vice may be clarity. For a law is overbroad to the extent that it
> announces a prohibition that reaches conduct which may not be prohibited. A
> legislature can make a law as "broad" and inclusive as it chooses unless it reaches
> into constitutionally protected ground. The clearer an "overbroad" statute is, the
> harder it is to confine it by interpretation within its constitutionally permissible
> reach.

*Id.* at 462, 377 S.E.2d at 144 (citation omitted).

> The facts in this case are uncontroverted. On March 10, 1987, a municipal police
> officer in the City of Princeton, in Mercer County, stopped a vehicle and arrested
> the driver for driving under the influence of alcohol. After searching the driver,
> the policeman discovered a .22 caliber automatic pistol inside the driver's jacket
> pocket. The driver was then asked to produce a license allowing him to carry such
> a weapon, and he subsequently advised the police officer that he did not have
> such a license.

*Id.* at 458-59, 377 S.E.2d at 140-41.  Less than two years later, after the Legislature reformed

West Virginia's gun laws in light of *Buckner*, the court affirmed the constitutionality of W.Va.

Code § 61-7-3 (1989) (requiring license to carry a *concealed* weapon), holding that

> Article III, Section 22 of the West Virginia Constitution gives a citizen the
> constitutional right to keep and bear arms; however, there is no corresponding
> constitutional right to keep and bear **concealed** deadly weapons.

Syllabus Point 1, *Application of Metheney*, 182 W.Va. 722, 391 S.E.2d 635 (1990) (emphasis

added).  Had the court chosen to apply the general rule of facial challenges articulated in *Lewis v.*

*Canaan Valley Resorts, Inc.*, 185 W.Va. 684, 691, 408 S.E.2d 634, 641 (1991) ("The challenger

must establish that no set of circumstances exists under which the legislation would be valid; the

fact that the legislation might operate unconstitutionally under some conceivable set of

circumstances is insufficient to render it wholly invalid."), and its federal counterpart, *U.S. v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."), it clearly would have decided *Buckner* differently, as the unnamed drunk driver was carrying his pistol inside his coat pocket, which was obviously concealed and thus outside the specific protections of W.Va. Const. Art. III, § 22, as construed in *Metheny*.  Likewise, the court could also have held that W.Va. Const. Art. III, § 22 does not protect the right of a person to carry a loaded pistol while under the influence of alcohol, as the legislative analysis and advertising materials promoting the Right to Keep and Bear Arms Amendment stated that the Amendment did not protect "carrying arms while intoxicated[.]" James W. McNeely, *The Right of Who to Bear What, When, and Where— West Virginia Firearms Law v. The Right-to-Bear-Arms Amendment*, 89 W.Va. L. Rev. 1125, 1149, 1180-81 (1987) (article cited with approval extensively in *Buckner*).[4]

W.Va. Const. Art. III, § 22, at its core, protects "the decent people of this state from being disarmed." McNeely, 89 W.Va. L. Rev. at 1143, 1178.  It "guarantee[s] that a person may exercise the choice to have arms to lawfully and effectively resist violent criminal aggression against self, family, or home." *Id.* at 1178.  This guarantee is not confined to the home or other narrowly-defined, purely private areas.  *See State ex rel. City of Princeton v. Buckner, supra.*

Martinsburg City Code § 545.14 has practical application only against law-abiding adults who are otherwise in full compliance with federal and state gun laws. A violation of Martinsburg City Code § 545.14 is punishable, at most, by a $1,000 fine and up to 30 days in jail.  This

---

[4]  Although W.Va. Code § 20-2-57b prohibits hunting while under the influence without regard to type of hunting equipment used, no West Virginia state law currently restricts or prohibits the possession or carrying of firearms or other weapons on the basis of intoxication.  Thus, West Virginia's courts have not been required to address this issue.

penalty is no deterrent to a criminal.  W.Va. Code § 61-7-3 prohibits carrying a concealed weapon without a license.  Possession of a firearm by a prohibited possessor such as a convicted felon, drug addict, illegal alien, involuntarily committed person, person adjudicated as a mental defective, person subject to certain domestic violence protective orders, or person who has been convicted of certain domestic violence-related offenses, regardless of whether the firearm is carried openly or concealed, is generally prohibited by both State and Federal law. 18 U.S.C. §§ 922(g) and 924(a)(2); W.Va. Code § 61-7-7.  Federal and State laws also prohibit minors from carrying a handgun, either openly or concealed, in most public places. 18 U.S.C. §§ 922(x) and 924(a)(6); W.Va. Code § 61-7-8.  W.Va. Code § 61-7-11 prohibits a person from "carry[ing], brandish[ing] or us[ing any deadly] weapon in a way or manner to cause, or threaten, a breach of the peace."  W.Va. Code § 61-7-12 prohibits any person from "wantonly perform[ing] any act with a firearm which creates a substantial risk of death or serious bodily injury to another[.]"  In every case, any violation of any of these laws is punishable far more severely than a violation of Martinsburg City Code § 545.14.  As most WVCDL members whose interests are stake in this action, including Mr. Thomm, have concealed handgun licenses, it must be noted that

> [legislative] auditors and [West Virginia State Police Deputy Superintendent Steve] Tucker said they were unaware of an instance when an officer was confronted by someone licensed to carry a concealed weapon. "Anecdotally, concealed weapon permit holders are law-abiding citizens that we generally don't have as defendants in criminal cases," Tucker said.

Lawrence Messina, *Troopers Say Manpower Lacking*, Charleston Gazette, Nov. 19, 2008, at A1. For these reasons, Martinsburg City Code § 545.14 is a direct attack on the core right of the decent people of this state to be armed.

As a law implicating a fundamental individual right—the absolute core of an individual's fundamental right to keep and bear arms for purposes of self-defense under W.Va. Const. Art. III, § 22—Martinsburg City Code § 545.14 is subject to strict scrutiny under the West Virginia

Constitution. "If the challenged [law] affects the exercise of a fundamental right . . . , the law will not be sustained unless the [government] can prove that the classification is necessary to the accomplishment of a compelling state interest." *Appalachian Power Co. v. State Tax Dep't*, 195 W.Va. 573, 594, 466 S.E.2d 424, 445 (1995) (citations omitted); *see also Board of Educ. of County of Kanawha v. West Virginia Bd. of Educ.*, 219 W.Va. 801, 807, 639 S.E.2d 893, 899 (2006) ("the strict scrutiny test is required when the law or governmental action at issue impinges upon a fundamental right"). "[I]t is clear that . . . the right to keep and bear arms [is] among those fundamental rights necessary to our system of ordered liberty[,]" *McDonald v. City of Chicago*, 561 U.S. ___, ___, 130 S.Ct. 3020, 3042 (2010), and "this right is deeply rooted in this Nation's history and tradition." *Id.* at ___, 130 S.Ct. at 3036 (internal quotation marks and citation omitted).

The offensiveness of Martinsburg City Code § 545.14 is further highlighted by the fact that, if upheld, it will deprive the decent, law-abiding people of this state, including WVCDL's members, of any means of self-defense if confronted by a criminal in a city-owned building.

Martinsburg City Code § 545.14 prohibits the possession or carrying of firearms in not only city office buildings, but also many other buildings such as rest facilities in city parks, city-owned housing, and other public buildings that are not used primarily for performing the official business of the City of Martinsburg. However, the Defendants deny Plaintiff's characterization of any such buildings as "non-sensitive." *See* FAC ¶ 33; Ans. ¶ 33; Sayre e-mail.

The Defendants do not maintain in any building covered by Martinsburg City Code § 545.14, other than Martinsburg City Hall, any security measures under which individuals entering the building are required to pass through metal detectors or submit to other security screenings designed to detect and interdict the possession or carrying of firearms in violation of

Martinsburg City Code § 545.14. The Defendants have alleged that metal detectors are in place at Martinsburg City Hall but no other buildings covered by Martinsburg City Code § 545.14. However, the precise nature of the security measures in place at Martinsburg City Hall and the adequacy of those measures for the purpose of protecting against the unauthorized possession or carrying of firearms have not been fully established. *See* FAC ¶ 34; Ans. ¶ 34; Sayre e-mail.

> The Defendants have no affirmative legal duty to guarantee the personal safety of individuals in buildings where Martinsburg City Code § 545.14 prohibits carrying weapons, nor would any of them be subject to any liability for any personal injuries or death suffered by any individual who is the victim of a crime in any building where Martinsburg City Code § 545.14 prohibits carrying weapons and was unable to defend him- or herself because he or she was disarmed in compliance with the ordinance.

Thomm Dec. ¶ 18.

The Defendants further deprive WVCDL's members of the means of self-defense beyond the walls of the directly affected buildings: The Defendants maintain laws, customs, practices, and policies that do not provide any means for individuals to temporarily check and store weapons in a secure storage facility prior to entering any buildings where Martinsburg City Code § 545.14 prohibits carrying weapons. FAC ¶ 35; Ans. ¶ 35.

Contrary to alarmist assertions that Defendants might try to offer, WVCDL does not take the absolutist position that W.Va. Const. Art. III, § 22 requires the government to allow the bearing of arms by literally anyone, anywhere, any time.

> The West Virginia legislature may, through the valid exercise of its police power, reasonably regulate the right of a person to keep and bear arms in order to promote the health, safety and welfare of all citizens of this State, provided that the restrictions or regulations imposed do not frustrate the constitutional freedoms guaranteed by article III, section 22 of the West Virginia Constitution, known as the "Right to Keep and Bear Arms Amendment."

Syllabus Point 4, *State ex rel. City of Princeton v. Buckner, supra*.

Independent of its ongoing litigation efforts, WVCDL has pursued and continues pursuing legislative measures to reflect its views of what are just and reasonable laws. However, the types of laws WVCDL prefers are obviously far more narrowly-tailored than Defendants prefer. WVCDL strongly believes an individual's right to self-defense should extend to all public buildings owned or controlled by state and local government agencies and other publicly-owned property. It has long been a settled matter of law that an individual has no specific right to police protection. The last potential, meaningful right that an individual has to protect him- or herself from a criminal attack is the right to self-defense and the means to do so. When seconds count, the police are only minutes away. So-called "gun-free zones" generally amount to little more than criminal protection zones that instill a false sense of security in unsuspecting members of the public and provide criminals and deranged lunatics a free fire zone for the duration of the police response time.

WVCDL also recognizes that some public buildings—such as court facilities, *see* McNeely, 89 W.Va. L. Rev. at 1149, 1180—have sensitive security considerations that may legitimately warrant the exclusion of weapons from the premises. However, without metal detectors, armed guards, and other meaningful, adequate security measures (similar to airports and federal courthouses), attempting to prohibit carrying weapons is a futile task, as criminals will carry regardless of any signs or additional criminal charges. As the proponents of the West Virginia Right to Keep and Bear Arms amendment stated:

> There is no social interest in preserving the lives and wellbeing of criminal aggressors at the cost of their victims. The only defensible policy society can adopt is one that will operate as a sanction against unlawful aggression. The police have no duty to protect the individual. *Warren v. District of Columbia*, 444 A.2d 1 (D.C. App. 1981) (en banc). One court reduced this principle of law to the succinct comment that "there is no constitutional right to be protected by the state against being murdered by criminals or madmen." *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982).

> The . . . guarantee is a victims' rights measure. It will guarantee that a person may exercise the choice to have arms to lawfully and effectively resist violent criminal aggression against self, family, or home.

McNeely, 89 W.Va. L. Rev. at 1177-78. For these reasons, WVCDL has advocated legislation, based in part upon Col. Rev. Stat. § 18-12-214(4) (2003), that would authorize any state or local government agency—including Defendants—to restrict or prohibit the possession or carrying of weapons in a "secure restricted access area" of any public building where specified security measures are in place. *See generally*, 2011 W.Va. House Bill 3125; 2011 W.Va. Senate Bill 543; WVCDL, *West Virginia Gun Owner Protection Act of 2011*, http://www.wvcdl.org/WVCDLbills/WVGOPA2011.html (last accessed Sep. 30, 2011). Unfortunately, at this time, even if Defendants adopted or wanted to adopt the proposed security measures outlined in proposed W.Va. Code § 61-7-11c of HB 3125 and SB 543 at all public buildings covered by Martinsburg City Code § 545.14, they lack appropriate statutory authorization to do so for the reasons stated in Part III.A., *supra*.  Thus, this type of option is beyond this Court's power to grant in this action.

For the foregoing reasons, WVCDL respectfully submits that Martinsburg City Code § 545.14 is unconstitutional under the West Virginia Right to Keep and Bear Arms Amendment.

## IV. Further Proceedings on Other Claims.

If this Court grants the pending motion for partial summary judgment as to any one of the three counts of the First Amended Complaint for which WVCDL now seeks summary judgment and grants the declaratory and injunctive relief requested in the motion for partial summary judgment, WVCDL's federal constitutional claims and state void-for-vagueness claim will become moot, as WVCDL will receive all the relief it seeks. It is well-settled that this Court

"need not reach the [Federal] constitutional question if there exists an alternative, nonconstitutional basis for [its] decision." *Hoffman v. Hunt*, 126 F.3d 575, 582 (4th Cir. 1997) (*citing Peters v. Hobby*, 349 U.S. 331, 338 (1955)).

## V. Conclusion.

For the reasons stated above, WVCDL respectfully requests that this Honorable Court enter an order granting WVCDL's motion for summary judgment pursuant to Fed. R. Civ. P. 56 and requests for declaratory and permanent injunctive relief contained therein.

Dated this 30th day of September, 2011,

    s/ James M. Mullins, Jr.
James M. Mullins, Jr.        (WV State Bar # 11129)
            Attorney for Plaintiff
The Law Offices of James M. Mullins, Jr., PLLC
101 North Kanawha Street, Suite 401
Beckley, WV 25801
Telephone: 304-929-3500 (o)/304-687-5492 (c)
FAX: 304-929-3503
E-mail: jim@mullinslawoffices.com

## Certificate Of Service

I hereby certify that on September 30, 2011, I electronically filed the foregoing document with the Clerk of the Court, which will send electronic notification of such filing to the following CM/ECF participant:

Floyd M. Sayre, III
Bowles, Rice, McDavid, Graff & Love, LLP
PO Box 1419
Martinsburg, WV 25402
Attorney for All Defendants



      s/ James M. Mullins, Jr.
James M. Mullins, Jr.        (WV State Bar # 11129)
       Attorney for Plaintiff
The Law Offices of James M. Mullins, Jr., PLLC
101 North Kanawha Street, Suite 401
Beckley, WV 25801
Telephone: 304-929-3500 (o)/304-687-5492 (c)
FAX: 304-929-3503
E-mail: jim@mullinslawoffices.com